41 F.3d 1272
 30 Fed.R.Serv.3d 1491
 Eric SCHROEDER, Plaintiff-Appellee,
v.
Pete McDONALD, Branch Administrator; Susan Segawa, Social
Worker; Ron Mico, Social Worker; George W.
Sumner, DPS Director; Roland Leong,
Prison Guard, Defendants-Appellants.
 No. 93-15169.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 1, 1993.
Decided Nov. 29, 1994.
 
 Steven S. Michaels, Deputy Atty. Gen., Honolulu, HI, for defendants-appellants.
 Eric A. Seitz and Edie A. Feldman, Honolulu, HI, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Hawai'i.
 Before: POOLE, WIGGINS, and T.G. NELSON, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Defendants-appellants appeal the district court's denial in part of their motion for summary judgment. Plaintiff-appellee brought suit under 42 U.S.C. Sec. 1983. The district court found that defendants-appellants were not entitled to qualified immunity with regard to five of plaintiff-appellee's eleven causes of action. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985). We find defendants-appellants are not entitled to qualified immunity on two causes of action. We affirm in part and reverse in part.
 
 I. FACTS AND PRIOR PROCEEDINGS
 
 2
 Plaintiff-appellee, Eric Schroeder, is a state prisoner serving a twenty-year sentence for first-degree robbery and kidnapping. Schroeder filed a pro se, in forma pauperis complaint in district court, alleging eleven causes of action. He is suing state prison officials under Sec. 1983, contending that his First, Eighth and Fourteenth Amendment rights were violated. Defendants-appellants each played some role in transferring Schroeder from a minimum security facility back to the medium security facility where he was originally assigned and had begun serving his sentence. Schroeder seeks compensatory damages of $725,000, punitive damages of $116,000, declaratory relief and equitable relief.
 
 
 3
 Schroeder primarily alleges that the transfer was in retaliation for his having earlier filed a separate civil rights action against a prison guard.[1] Schroeder further alleges that the transfer was in retaliation for his having complained, in a letter dated January 1, 1991, to defendant McDonald that the minimum security facility was in violation of several state and federal laws regarding the infrastructure and maintenance of prisons. Finally, Schroeder alleges that the transfer was in retaliation for his having mailed a motion to all of the district court judges for the District of Hawaii, asking for injunctive relief to permit him access to the courts while he was incarcerated at the minimum security facility.
 
 
 4
 Appellants counter that the transfer back to the medium security facility was justified. First, Schroeder committed seven rule violations in only his first sixteen days at the minimum security facility.[2] Second, Schroeder imposed an excessive burden on the correctional staff by constantly demanding access to the law library and continuously requesting legal materials.[3] Third, Schroeder violated his promise not to file grievances or court actions against the staff at the minimum security facility. Fourth, Schroeder had used force or threats of force upon a correctional worker while at the medium security facility, a fact appellants did not know when they accepted Schroeder as a transfer. Finally, Schroeder's custody level did not warrant the transfer from the medium security facility to the minimum security facility in the first place, especially given that he had already committed numerous rule violations while incarcerated at the medium security facility.
 
 
 5
 Defendants moved for summary judgment on qualified immunity grounds. A magistrate recommended that defendants' motion for summary judgment be granted. On December 3, 1992, the district court entered an order adopting in part and modifying in part the magistrate's recommendations, 823 F.Supp. 750. Specifically, the district court granted summary judgment to all defendants on six of the eleven causes of action.[4] Furthermore, the district court granted summary judgment to one defendant, but denied summary judgment to the other defendants, on two additional causes of action.[5] Finally, the district court denied defendants summary judgment on the remaining three causes of action.[6] The December 3, 1992, order was never set forth on a separate document. See generally Fed.R.Civ.P. 58.
 
 
 6
 On December 18, 1992, the district court received and stamped "filed" a motion for reconsideration submitted by Schroeder. Schroeder challenged the district court's grant in part of summary judgment to defendants. On December 30, 1992, while Schroeder's motion for reconsideration was still pending, defendants filed a notice of appeal. Defendants challenge the district court's denial in part of their motion for summary judgment. On January 11, 1993, the district court denied Schroeder's motion for reconsideration.
 
 II. JURISDICTION
 
 7
 At the time defendants filed their notice of appeal, Rule 4(a)(4)[7] plainly stated that a notice of appeal filed during the pendency of a Rule 59 motion "shall have no effect." In Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61, 103 S.Ct. 400, 403-04, 74 L.Ed.2d 225 (1982) (per curiam), the Supreme Court held that a notice of appeal filed during the pendency of a Rule 59 motion is a nullity. See also Allah v. Superior Court, 871 F.2d 887, 889 (9th Cir.1989). However, Rule 4(a)(4) was amended, effective December 1, 1993,[8] to provide that when a notice is prematurely filed, it shall be in abeyance and become effective upon the date of entry of an order disposing of the Rule 59(e) motion.
 
 
 8
 First, we must decide whether Schroeder's motion for reconsideration was, in fact, a Rule 59(e) motion. Although Schroeder indicated that he was bringing his motion under Local Rule 220-10 of the District Court for the District of Hawaii, the fact that Schroeder labeled his motion as a local rule motion is not dispositive. See Fuller v. M.G. Jewelry, 950 F.2d 1437, 1441-42 (9th Cir.1991) (holding motion for reconsideration brought pursuant to local rules may be treated as one brought pursuant to Rule 59(e) or Rule 60(b)).
 
 
 9
 We find that Schroeder did, in fact, file a timely Rule 59(e) motion. A "timely filed motion for reconsideration under a local rule is a motion to alter or amend a judgment under Fed.R.Civ.P. 59(e)." Bestran Corp. v. Eagle Comtronics, Inc., 720 F.2d 1019, 1019 (9th Cir.1983). The motion was timely because Schroeder served it within ten days after entry of judgment. There are two possibilities as to when judgment was entered. Judgment may have been entered on December 3, 1992, the date the district court issued its order. See Carson v. Block, 790 F.2d 562, 564 (7th Cir.) ("[T]he essence of a 'collateral' order is the absence of a final judgment on a separate document."), cert. denied, 479 U.S. 1017, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986). Or, judgment may have never been entered because the order was never set forth on a separate document. See Fed.R.Civ.P. 58; Britt v. Whitmire, 956 F.2d 509, 510 (5th Cir.1992) (noting that Rule 58 mandates that a district court's partial grant of summary judgment be set forth on a separate document). Either way, Schroeder filed in a timely manner.
 
 
 10
 If judgment were entered on December 3, 1992, then Schroeder was required to serve his motion for reconsideration by December 17, 1992, which was the tenth day for serving purposes after the entry of judgment on December 3, 1992. See Fed.R.Civ.P. 6(a).[9] "[A]n incarcerated pro se litigant completes 'service' under Fed.R.Civ.P. 5(b) upon submission to prison authorities for forwarding to the party to be served." Faile v. Upjohn Co., 988 F.2d 985, 988 (9th Cir.1993); see Simmons v. Ghent, 970 F.2d 392, 393 (7th Cir.1992) (holding that the Houston filing rule that an incarcerated pro se litigant files a notice of appeal on the day he delivers it to prison authorities for forwarding to the district court applies equally to other filings, including Rule 59(e) motions); Smith v. Evans, 853 F.2d 155, 161-62 (3d Cir.1988) (holding that the Houston filing rule applies to Rule 59(e) motions). Schroeder submitted his documents to prison authorities for mailing on December 13, 1992. Schroeder was still a pro se litigant at this time. Accordingly, Schroeder served the motion on December 13, 1992, which was within the ten-day period set by Rule 59(e).
 
 
 11
 If, on the other hand, judgment was never entered because the order was never set forth on a separate document, Schroeder still filed his motion within ten days because the clock never started to run. Therefore, Schroeder necessarily served the motion within the ten-day period set by Rule 59(e).
 
 
 12
 Accordingly, Schroeder filed a timely Rule 59(e) motion and defendants filed a notice of appeal before the disposition of that motion. Thus, the issue before us is whether defendants' notice of appeal may be resurrected by a retroactive application of the amended version of Rule 4(a)(4). See Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir.1994) (applying amended Rule 4(a)(4) retroactively); Leader Nat'l Ins. Co. v. Industrial Indem. Ins. Co., 19 F.3d 444, 445 (9th Cir.1994) (applying amended Rule 4(a)(4) retroactively); Burt v. Ware, 14 F.3d 256, 258 (5th Cir.1994) (holding amended Rule 4(a)(4) applies retroactively unless it would work an injustice) (per curiam).
 
 
 13
 The Supreme Court has ordered that the amended Rules of Appellate Procedure "shall govern all proceedings in appellate cases [commenced after December 1, 1993] and, insofar as just and practicable, all proceedings in appellate cases then pending." 61 U.S.L.W. 5365 (U.S. Apr. 27, 1993). The defendants' appeal was pending on December 1, 1993; thus, if the application of the 1993 amendment to this case is "just and practicable," we have jurisdiction.
 
 
 14
 We conclude that retroactive application of the amended provisions of Rule 4(a)(4) is appropriate. See Wallis, 26 F.3d at 888; Leader, 19 F.3d at 445; Burt, 14 F.3d at 258. The parties briefed this case and argued the merits at oral argument, as though the notice of appeal were valid. Schroeder cannot claim prejudice because he did not discover the defect in the filing of the notice of appeal until this court ordered supplemental briefing on the issue of jurisdiction. To allow the parties to proceed to the appeal is just. Further, practicality is no problem. No adjustments in briefing schedules or in calendaring of oral argument were required. Accordingly, we have jurisdiction to consider the appeal.
 
 III. DISCUSSION
 A. SUMMARY JUDGMENT AFFIDAVIT
 
 15
 Schroeder filed a verified complaint.[10] A verified complaint may be used as an opposing affidavit under Rule 56. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir.1987) (per curiam). To function as an opposing affidavit, however, the verified complaint must be based on personal knowledge and set forth specific facts admissible in evidence. Fed.R.Civ.P. 56(e);[11] McElyea, 833 F.2d at 197; Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir.1985).
 
 
 16
 Here, Schroeder's verified complaint constituted an opposing affidavit because it was based on Schroeder's personal knowledge of admissible evidence. Schroeder's allegations were not based purely on his belief. See Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc., 944 F.2d 1525, 1529 (9th Cir.1991) (rejecting an affidavit because it was "not based on personal knowledge, but on information and belief"), aff'd, --- U.S. ----, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).
 
 
 17
 Schroeder demonstrated his personal knowledge by citing two specific instances[12] where correctional staff members at the minimum security facility made statements from which a jury could reasonably infer a retaliatory motive for Schroeder's subsequent transfer. First, Schroeder reported that defendant Segawa was very upset by Schroeder's January 1, 1991, letter to defendant McDonald in which Schroeder complained about the conditions at the minimum security facility. After asking Schroeder why he was complaining, she stated, "I think it was a mistake bringing you to [the minimum security facility]." Complaint at 20-21, pp 71-75.
 
 
 18
 Second, Schroeder asserted that the Chief of Security at the minimum security facility, John Robelido, visited Schroeder shortly after Schroeder mailed his January 13, 1991, motion for injunctive relief to all district court judges in the District of Hawaii. Robelido asked Schroeder to talk to him before making any further complaints, promising Schroeder that he would work out any problems that may arise. Importantly, however, Robelido also remarked at this time that when the Department of Public Safety asked the minimum security facility to accept Schroeder as a transfer from the medium security facility, the staff at the minimum security facility was aware of Schroeder's reputation as a complainer, but thought that Schroeder only complained through internal channels, filing administrative grievances. Robelido indicated, in essence, that the staff was unpleasantly surprised to discover that Schroeder also complained through external channels, filing complaints and motions with the courts. Complaint at 24-25, pp 87, 89.
 
 
 19
 Accordingly, we conclude that Schroeder did file an opposing affidavit to defendants' motion for summary judgment. We now turn to the merits of defendants' assertion of qualified immunity.
 
 B. QUALIFIED IMMUNITY
 
 20
 We review de novo the district court's denial of summary judgment on qualified immunity grounds. Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993); Baker v. Racansky, 887 F.2d 183, 185 (9th Cir.1989).
 
 
 21
 The defense of qualified immunity protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The rule of qualified immunity " 'provides ample support to all but the plainly incompetent or those who knowingly violate the law.' " Burns v. Reed, 500 U.S. 478, 494-95, 111 S.Ct. 1934, 1943-44, 114 L.Ed.2d 547 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991) (emphasis supplied). Furthermore, "[t]he entitlement is an immunity from suit rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815-16, 86 L.Ed.2d 411 (1985).
 
 
 22
 The qualified immunity test requires a two-part analysis: "(1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?" Act Up!, 988 F.2d at 871; see also Tribble v. Gardner, 860 F.2d 321, 324 (9th Cir.1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989).
 
 
 23
 1. Retaliation Claim: Causes of Action # 1, # 4 and # 10
 
 
 24
 First, the law governing defendants' conduct was clearly established. Specifically, the law clearly established that defendants cannot transfer a prisoner from one correctional institution to another in order to punish the prisoner for exercising his First Amendment right to pursue civil rights litigation in the courts. See Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). Because the law governing defendants' conduct was clearly established, we must determine whether a reasonable prison official could have believed the conduct was lawful. See Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993).
 
 
 25
 A reasonable prison official could have believed the transfer was lawful if he were advancing a legitimate penological goal and his means were narrowly tailored to achieve that goal. Rizzo, 778 F.2d at 532. Legitimate goals of a correctional institution include the preservation of internal order and discipline and the maintenance of institutional security. Id. Here, Schroeder was disrupting internal discipline. Specifically, Schroeder committed seven rule violations in only his first sixteen days at the minimum security facility.
 
 
 26
 Schroeder was also disrupting internal order. Specifically, Schroeder imposed an excessive burden on the correctional staff at the minimum security facility by constantly demanding access to the law library and continuously requesting legal materials. The facility was not adequately staffed to handle such a high volume of requests. See supra note 3. Finally, Schroeder also posed a security problem to the correctional staff at the minimum security facility. Specifically, Schroeder had used force or threats of force upon a correctional worker while at the medium security facility, a fact defendants did not know when they accepted him as a transfer. In addition, Schroeder's custody level did not warrant the transfer from the medium security facility to the minimum security facility in the first place.
 
 
 27
 Accordingly, we conclude that defendants were advancing legitimate penological goals and their means were narrowly tailored to meet those goals; thus, defendants could have believed the transfer of Schroeder from the minimum correctional facility back to the medium correctional facility was lawful. See Rizzo, 778 F.2d at 532. Consequently, we conclude that defendants are entitled to the defense of qualified immunity with regard to the retaliation claim. Romero, 931 F.2d at 627 ("[R]egardless of whether the constitutional violation occurred, the officer should prevail if ... the officer could have reasonably believed that his particular conduct was lawful.") (emphasis added).
 
 2. Due Process Claim: Cause of Action # 9
 
 28
 The Fourteenth Amendment prohibits the deprivation of liberty or property without due process of law. A due process claim is cognizable only if there is a recognized liberty or property interest at stake. Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Therefore, Schroeder must establish that he had either a liberty interest or a property interest sufficient to trigger due process protection.
 
 
 29
 "An inmate's liberty interests are sufficiently extinguished by his conviction so that the state may change his place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another." Rizzo, 778 F.2d at 530. However, due process protections apply if "there is some guarantee that transfer will not be effected except for misbehavior or some other specified reason." Id.; see also Olim v. Wakinekona, 461 U.S. 238, 254-55, 103 S.Ct. 1741, 1750, 75 L.Ed.2d 813 (1983) (noting that "a liberty interest may be 'created' by state laws, prison rules, regulations, or practices. State laws that impose substantive criteria which limit or guide the discretion of officials have been held to create a protected liberty interest.") (Marshall, J., dissenting); Hewitt v. Helms, 459 U.S. 460, 469, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983); Wolff v. McDonnell, 418 U.S. 539, 556-57, 94 S.Ct. 2963, 2974-75, 41 L.Ed.2d 935 (1974). Thus, we must determine whether defendants were restricted in their ability to transfer Schroeder back to the medium security facility by prison regulations. We conclude that defendants were.
 
 
 30
 At issue here is Prison Policy Nos. 493.18.01 and .03. Prison Policy No. 493.18.01 provides that an inmate must be classified according to the level of risk he represents. Further, the regulation states that no inmate should be kept at a more secure status than his potential risk dictates. Prison Policy No. 493.18.03 provides a scoring system by which inmates are classified and transfers are determined.
 
 
 31
 The district court found that Prison Policy No. 493.18 contained "clear substantive predicates" and "mandatory language of the sort required under Dix [v. County of Shasta, 963 F.2d 1296 (9th Cir.1992) ] to create a protectable liberty interest." Specifically, the district court found that Prison Policy No. 493.18 spoke in mandatory terms about how the classification of prisoners should be conducted. We agree. Therefore, we conclude that Schroeder established that he had a liberty interest sufficient to trigger due process protection. We turn then to the two-part qualified immunity test to determine whether defendants are nonetheless entitled to a defense from suit.
 
 
 32
 First, was the law governing defendants' conduct clearly established? See Act Up!, 988 F.2d at 871. We conclude that it was. Specifically, the law clearly established that defendants must follow mandatory prison regulations. Second, could a reasonable prison official have believed the conduct was lawful? See id. We conclude that a reasonable prison official could not have believed the conduct was lawful. Specifically, when defendants transferred Schroeder back to the medium security facility, Schroeder had a score of 9. Defendants knew that Schroeder had to have a score of 21 to increase his security classification. Thus, defendants acted in complete disregard for clearly established prison regulations.
 
 
 33
 Accordingly, defendants fail the second part of the qualified immunity test. Consequently, we conclude that defendants are not entitled to the defense of qualified immunity with regard to the due process claim.
 
 
 34
 3. Emotional Distress Claim: Cause of Action # 11
 
 
 35
 Schroeder alleges that he suffered emotional and mental trauma as a result of defendants' actions. The federal courts exercise supplemental jurisdiction over this claim because it arises out of the same nucleus of operative fact. The district court found that summary judgment on this claim is inappropriate because other claims are still unresolved. We agree.
 
 IV. CONCLUSION
 
 36
 For the foregoing reasons, we affirm in part and reverse in part. The district court properly found that defendants are not entitled to the defense of qualified immunity with regard to the due process claim. Accordingly, the district court also properly found that summary judgment on the emotional distress claim is inappropriate at this time. The district court erred, however, by finding that defendants are not entitled to the defense of qualified immunity with regard to Schroeder's retaliation claim.
 
 
 37
 AFFIRMED IN PART and REVERSED IN PART.
 
 
 
 [1]
 See Schroeder v. Leong, D.C.Civ. No. 90-00112 (D.Haw.), C.A. No. 91-16195, 967 F.2d 590 (Table) (9th Cir.). Note that this prison guard, Roland Leong, is also a defendant in this action
 
 
 [2]
 Schroeder committed the following seven violations: three instances of refusing to obey staff orders; two instances of possessing unauthorized materials; one instance of failing to perform work as instructed; and one instance of harassing correctional workers
 
 
 [3]
 Schroeder alleges that the law library at the minimum security facility is inadequate. He asserts that the law library is too small and unreasonably heated, lacks important legal volumes, and that the library aides fail to provide the necessary legal assistance. Schroeder further asserts that the law library has dozens of unopened boxes containing legal documents including advance sheets, recent federal reporter supplements and Supreme Court reporter volumes
 Schroeder desires access to the law library so that he may litigate all of the complaints he has filed. For example, at the time Schroeder filed his complaint in this action, he had six civil cases pending before the U.S. District Court in Hawaii, one civil case in the Ninth Circuit Court of Appeals, one criminal case in Hawaii state court, and six federal and state agency actions.
 
 
 [4]
 The district court granted summary judgment to all defendants as to six causes of action, which included:
 (1) Defendant Espinas's gross omission to establish at the minimum security facility an adequate law library and an effective library access program violated Schroeder's First and Fourteenth Amendment rights to practice jailhouse lawyering [# 2];
 (2) Defendant Espinas's gross omission to establish at the minimum security facility an adequate law library and an effective library access program was a substantial cause in defendants Mico and Segawa's motion to transfer Schroeder back to the medium security facility, thus abridging Schroeder's First and Fourteenth Amendment rights to expression, association and redress [# 3];
 (3) Defendants Mico, Segawa, McDonald, Espinas and Leong violated Schroeder's Fourteenth Amendment rights by acting in contravention of Prison Policy No. 493.12.02 by depriving Schroeder of sufficient facilities and time to prepare his court documents [# 5];
 (Prison Policy No. 493.12.02 establishes that prisoners shall not be penalized for seeking access to courts or legal services and that defendants shall assist prisoners in gaining such access to courts.)
 (4) Defendant Sumner's review and approval of Schroeder's transfer caused Schroeder substantial constitutional harm [# 6];
 (5) Defendants Segawa, Mico and McDonald's assignment of Schroeder to the Orientation Work Crew contravened Prison Policy No. 17-201.5(a)(18), and thus violated Schroeder's Fourteenth Amendment rights [# 7]; and
 (Prison Policy No. 17-201.5(a)(18) establishes that prisoners shall be allowed to participate in employment in keeping with their interests, needs and abilities.)
 (6) Defendant Leong's intentional and sadistic harassment of Schroeder furthered no legitimate penological interest, and thus violated Schroeder's Eighth and Fourteenth Amendment rights [# 8].
 
 
 [5]
 The district court granted summary judgment to defendant Sumner, but denied summary judgment to the other defendants as to the following two causes of action:
 (1) Defendants Mico, Segawa and McDonald transferred Schroeder in retaliation for exercising his constitutional rights to expression, association, redress and court access [# 4]; and
 (2) Defendants transferred Schroeder in retaliation for exercising his constitutional rights and thus violated Schroeder's First and Fourteenth Amendment rights [# 10].
 
 
 [6]
 The district court denied defendants' motion for summary judgment as to the following three causes of action:
 (1) Defendant Leong harassed and retaliated against Schroeder because Schroeder brought a civil rights suit against defendant Leong [# 1];
 (2) Defendants Sumner, Segawa, Mico and McDonald violated Schroeder's Fourteenth Amendment rights by reclassifying him in violation of established prison policy to assign inmates to the least restrictive confinement that adequately addresses the level of risk an inmate represents to the facility and to the community at large [# 9]; and
 (3) Defendants' actions were the proximate cause of the emotional trauma that Schroeder suffered and continues to suffer subsequent to his transfer back to the medium security facility [# 11].
 
 
 [7]
 The version of Rule 4(a)(4) in effect at the time defendants filed their appeal provided in part:
 If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party ... under Rule 59 ..., the time for appeal for all parties shall run from the entry of the order denying ... such motion. A notice of appeal filed before the disposition of [such motion] shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above.
 Fed.R.App.P. 4(a)(4) (emphasis supplied).
 
 
 [8]
 The amended version of Rule 4(a)(4) provides in part:
 A notice of appeal filed after announcement or entry of the judgment but before disposition of any of the above motions is ineffective to appeal from the judgment or order ... until the date of the entry of the order disposing of the last such motion outstanding.
 Fed.R.App.P. 4(a)(4), as amended December 1, 1993.
 
 
 [9]
 Rule 6(a) provides in part, "When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Fed.R.Civ.P. 6(a)
 
 
 [10]
 Appellants question whether Schroeder's complaint was verified in conformity with 28 U.S.C. Sec. 1746, because Schroeder's verification stated that "the facts stated in the ... complaint [are] true and correct as known to me." (Emphasis supplied.) Although Schroeder did not follow Sec. 1746's form with precision, Schroeder did verify his complaint because he stated under penalty of perjury that the contents were true and correct
 
 
 [11]
 Rule 56(e) provides, in part, that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."
 
 
 [12]
 In addition, Schroeder may have demonstrated his personal knowledge by citing a third instances where a correctional staff member at the minimum security facility made a statement from which a jury could reasonably infer a retaliatory motive for Schroeder's subsequent transfer. Specifically, Schroeder alleged that a staff member told him that no facility wants him because he sues prison personnel. Complaint at 36, p 134. But, we find this allegation to be insufficiently specific. See Berrigan v. Greyhound Lines, Inc., 782 F.2d 295, 299 (1st Cir.1986) (noting that duty to create a genuine issue of material fact requires more than a " 'skeletal set of bland allegations' ") (citing Dewey v. University of New Hampshire, 694 F.2d 1, 4 (1st Cir.1982), cert. denied, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983)). Schroeder should have indicated which staff member told him this, when, where, or in front of whom