**Alfred G. THOMASON, Jr., Plaintiff,**

v.

**John KITZHABER, Governor, State of Oregon; et al., Defendants.**

**Civil No. 01–171–JO.**

United States District Court,
D. Oregon.

Aug. 2, 2002.

Alfred G. Thomason, Jr., Roanoke, VA, Plaintiff Pro Se.

Lynne D. Rennick, Oregon Department of Justice, Trial Division, Salem, OR, for Defendants.

*OPINION AND ORDER*

ROBERT E. JONES, District Judge.

Plaintiff Alfred Thomason, a former inmate at the Oregon State Correctional Institution ("OSCI") who currently is on parole, brings this action *pro se*, seeking damages and injunctive relief for defendants'[1] alleged violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.

The case is now before the court on defendants' motion for summary judgment (# 32). For the reasons set forth below, defendants' motion for summary judgment is granted and this action dismissed.

FACTUAL BACKGROUND

Plaintiff is wheelchair bound due to a spinal cord injury resulting from a gunshot wound to his spine in May 1981, while he was in the community on parole. In August 1981, he was returned to prison from parole and housed at the Oregon State Penitentiary ("OSP") until March 28, 1983, when he was transferred to OSCI. Plaintiff remained, for the most part, at OSCI until his release on parole in February 2001.

Plaintiff's complaint[2] alleges, in essence, that since 1981 he has suffered chronic pain, but that over the past 20 years, neither "[the Oregon Department of Corrections ('ODOC')] nor the medical department has * * * rendered an effective treatment for my chronic pain problem." Complaint, p. 2. Plaintiff alleges that over the years he received drug treatment, which was ineffective. Complaint, p. 3. In 1986, the chief medical officer ("CMO") ordered diagnostic testing and prescribed use of a "TENS" unit. Complaint, p. 3.

Plaintiff alleges that in 1999, in response to his efforts to obtain "improved medical care and treatment for his intense chronic pain," the CMO referred plaintiff to a specialist, Dr. Collada. Following examination and testing over a period of six months, Dr. Collada recommended a procedure involving implantation of a spinal cord stimulation ("SCS") device. The ODOC medical committee considered the recommended treatment and rejected it. Complaint, p. 3–4.

Plaintiff further alleges that the CMO then referred him to the Oregon Health Sciences University pain management clinic, where he was seen by Dr. Andrew Chiu in April 2000. Dr Chiu recommended against SCS implantation based on plaintiff's coexisting diseases of diabetes, urinary tract infections, recurrent cellulitis, and cardiovascular disease. Complaint, p. 4.

---

1. The named defendants are Governor John Kitzhaber; David Cook, Director of the Oregon Department of Corrections ("ODOC"); Catherine Knox, former Administrator of ODOC Health Services; Michael Puerini, M.D., Chief Medical Officer at OSCI; and ODOC.

2. Plaintiff filed a verified complaint, signed and certified as true under penalty of perjury, which may function similarly to an opposing affidavit. *See Schroeder v. McDonald,* 55 F.3d 454, 460 (9th Cir.1995).

Plaintiff asserts that defendants "demonstrated over a long period a complete indifference to his pain and chronic suffering by failing and/or refusing to inform plaintiff of SCS and other treatments thereby unnecessarily prolonging plaintiff's chronic and intensely painful condition." Complaint, pp. 4–5. He further asserts that

> By prescribing a long series of ineffectual medications, defendants and/or their agents knowingly and with deliberate indifference to plaintiff's pain and suffering ch[ose] to maintain a course of inaction that could not reasonably be expected to yield results that are favorable for the plaintiff but would save the state the cost of proper treatment.
> * * * This delay in treatment has been devastating to the plaintiff.

Complaint, p. 5.

In May 2002, plaintiff submitted additional briefing to the effect that after his release, he returned home to Roanoke, Virginia. There, he applied for and eventually obtained social security disability benefits and Medicaid coverage. In February 2002, he consulted Dr. Cyrus Bakhit, who recommended SCS implantation. After successful implantation of a temporary trial device, in April 2002, plaintiff underwent implantation surgery. He claims that he now has control of his pain. Important New Information Supporting Dismissal of Summary Judgment, pp. 2–3.

## STANDARDS

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct.

2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge,* 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service,* 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

A verified complaint, which is signed and certified as true under penalty of perjury, may be used as an opposing affidavit. *Schroeder v. McDonald,* 55 F.3d 454, 460 (9th Cir.1995). To function as an opposing affidavit, a verified complaint must be based on personal knowledge and set forth specific facts admissible in evidence. *Schroeder,* 55 F.3d at 460 (citations omitted).

## DISCUSSION

Defendants offer several arguments in favor of summary judgment. First, defendants contend that this action is barred under the doctrine of claim preclusion. Second, defendants argue that plaintiff fails to state a claim for an Eighth Amendment violation. Defendants also assert that the state officials cannot be held liable under a *respondeat superior* theory and that Governor Kitzhaber, David Cook, and Catherine Knox must, therefore, be dismissed. Finally, defendants assert that defendant Dr. Puerini is entitled to qualified immunity.

### 1. Claim Preclusion

Defendants contend that plaintiff's present complaint is precluded by earlier state court litigation. The record shows that sometime in the year 2000, plaintiff, represented by counsel, filed a writ of habeas corpus in Marion County, *Thomason v. Mitch Morrow,* Marion County Circuit Court Case No. 00C15911. *See* Defendants' Exhibit 104. In October 2000, defendant Morrow moved to dismiss plaintiff's writ. The text of defendant's motion reveals that plaintiff's claim was based on the same underlying set of facts as is his present claim. Plaintiff admits as much in this court: "The same facts of this case were in another action filed in the state court, Thomason v Morrow case no. 00C15911, filed in Marion County." Complaint, p. 1; *see also* Response to Defendants' Motion for Summary Judgment, p. 2.

In his state court motion to dismiss, defendant Morrow argued—as the defendants argue in this case—that

> Thomason complains that [OSCI] is deliberately indifferent to his serious spinal condition by refusing to provide spinal cord stimulation (SCS). Thomason admits that OSCI has gathered conflicting opinions on the propriety of SCS treatment. Proving an honest difference of medical opinion regarding diagnosis and treatment does not establish deliberate indifference.

Defendants' Exhibit 104, p. 1 (emphasis deleted). Indeed, although somewhat rephrased, the arguments set forth on pages 7–10 of defendants' present motion are virtually identical to those Morrow made in the state court case. *See* Defendants' Exhibit 104. On January 2, 2001, "having fully considered the pleadings, evidence, memoranda, exhibits, and being fully informed in the premises," Judge Richard Barber granted defendant's motion and entered judgment against plaintiff. Defendants' Exhibit 104(a).

■ "Federal courts must give state court judgments the same preclusive effect as they would be given by the courts of that state." *Dodd v. Hood River County,* 136 F.3d 1219, 1225 (9th Cir.1998)(*citing,* inter alia, Full Faith and Credit Act, 28 U.S.C. § 1738). Consequently, Oregon law governs my analysis of defendants' preclusion argument. Under Oregon law,

> [A] plaintiff who has prosecuted one action against a defendant through to a final judgment * * * is barred [*i.e.,* precluded] * * * from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.

*Drews v. EBI Companies,* 310 Or. 134, 140, 795 P.2d 531 (1990)(*quoting Rennie v. Freeway Transport,* 294 Or. 319, 323, 656 P.2d 919 (1982)(internal citations omitted)). Claim preclusion does not require actual litigation of an issue of fact or law, nor does it require that the determination of the issue "be essential to the final or end result * * *." *Id.* at 140, 795 P.2d 531. Claim preclusion does require, however, the opportunity to litigate, whether used or not, and finality. *Id.* Moreover, in the Ninth Circuit, if a federal constitutional claim, including a claim under 42 U.S.C. § 1983, is "based on the same asserted wrong as was the subject of a state action," the second claim will "bar the federal constitutional claim whether it was asserted in state court or not." *Scoggin v. Schrunk,* 522 F.2d 436, 437 (9th Cir.1975); *see also Gallagher v. Frye,* 631 F.2d 127, 128 (9th Cir.1980).

■ All the requirements of claim preclusion are met in this case. That plaintiff

has named state officials who were not parties to the earlier action as additional defendants in this case does not change the preclusive effect of the prior judgment, because his claims in both actions are, in reality, claims against the state of Oregon.[3] *See Stafford v. Briggs,* 444 U.S. 527, 542 n. 10, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). Consequently, defendants are entitled to summary judgment based on claim preclusion.

■ Although I conclude that plaintiff's present claim is barred, I also note the following. The substantial medical records reflecting almost 20 years of treatment belie plaintiff's contention that defendants demonstrated "deliberate indifference to serious medical needs" sufficient to constitute the "unnecessary and wanton infliction of pain"—the necessary premise to his Eighth Amendment claim of cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 103–106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Far from establishing "deliberate indifference,"[4] at most the record demonstrates a difference of medical opinion between doctors over plaintiff's medical treatment. A difference of medical opinions between professionals does not amount to deliberate indifference. *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989); *Estelle v. Gamble,* 429 U.S at 107, 97 S.Ct. 285 (matters for medical judgment do not represent cruel and unusual punishment).

For the above reasons, defendants' motion for summary judgment must be granted. Because of this disposition, I decline to address defendants' qualified immunity argument.

CONCLUSION

Defendants' motion for summary judgment (# 32) is GRANTED. Any other pending motions are denied as moot, and this action is dismissed with prejudice.

___

3. In this regard I note that defendants are correct that plaintiff has failed to allege that defendants Governor Kitzhaber, David Cook, and Catherine Knox were personally involved in any alleged deprivation of his constitutional rights. Consequently, these three defendants are entitled to dismissal. *See King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir.1987)(*citing Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)).

4. The threshold state of mind standard, deliberate indifference, is exceptionally stringent. It requires proof that at a minimum, defendants thought about the matter and chose to ignore it. *Farmer v. Brennan,* 511 U.S. 825, 837–38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The "deliberate indifference" standard is functionally equivalent to criminal recklessness. *Id.* at 839–40, 114 S.Ct. 1970.