Leonard Renal ROBERTS, Plaintiff,

v.

Ron CHAMPION; James Saffle; and
Ron Colliver, Defendants.

No. 99–CV–842–P (J).

United States District Court,
N.D. Oklahoma.

March 27, 2003.

Leonard Renal Roberts, SCC–Lexington, Lexington, Pro se.

Linda Kathryn Soper, Office of the Attorney General, Oklahoma City, for Ron Champion, Warden, James Saffle, Ron Colliver, Case Manager Supervisor, defendants.

## *ORDER*

PAYNE, District Judge.

The Court has for consideration the Report and Recommendation (the "Report") of the U.S. Magistrate Judge entered on February 20, 2003 (Docket # 36), in this 42 U.S.C. § 1983 civil rights action. The Magistrate Judge recommends that, pursuant to Fed.R.Civ.P. 12(b)(6), Defendants' motion to dismiss (# 12–1) be granted. On March 19, 2003, after receiving an extension of time, Plaintiff, a state inmate appearing *pro se*, filed his objections to the Report (# 39). Plaintiff has been granted leave to proceed *in forma pauperis. See* # 3.

In the Report, the Magistrate Judge addresses each of Plaintiff's fourteen (14) claims and Defendants' response to the claims. After thorough analysis of each claim, the Magistrate Judge recommends dismissal of all claims for failure to state a claim upon which relief may be granted. The Court has conducted a *de novo* review of the matter in accordance with 28 U.S.C. § 636(b)(1). Having done so, the Court concurs with Magistrate Judge's determinations. The Court concludes that no purpose would be served by repeating those

determinations or by presenting any additional analysis here as to those determinations, with the exception of one claim addressed by Plaintiff in his objection.

In his objection to the Report, Plaintiff states an articulated objection only to the recommendation concerning his claims arising from his "bogus & malice" misconduct for Menacing Staff. As he did in his complaint, Plaintiff continues to allege due process violations and to challenge the validity of evidence presented during disciplinary proceedings. However, as correctly determined by the Magistrate Judge, the Supreme Court has made clear that "[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). This rule of law applies not only when the prisoner challenges his judgment as a substantive matter but also when he challenges misconducts entered as a result of prison disciplinary infractions. *Balisok*, 520 U.S. at 648, 117 S.Ct. 1584. Having reviewed the record in this case, the Court concludes that Plaintiff's request for damages resulting from his prison disciplinary proceedings, must be dismissed based on *Heck*. Therefore, the Magistrate's recommendation that Plaintiff's claim be dismissed shall be adopted over Plaintiff's objection.

Furthermore, the Court agrees with the Magistrate Judge's conclusion that Plaintiff's request for expungement of the misconduct from his prison record is not appropriate in this § 1983 civil rights action.

That request must be presented in a habeas corpus action after exhausting state remedies. *See Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (holding that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"). The Court concludes that the Magistrate's recommendation that Plaintiff's claim be dismissed shall be adopted over Plaintiff's objection.

Therefore, after reviewing Plaintiff's objections to the Report and the facts of this case, and pursuant to Fed. R. Civ. P 72(b) and 28 U.S.C. § 636(b)(1)(C), the Court finds Plaintiff's objections lack merit and concludes that the Report should be adopted and affirmed in its entirety. For the reasons stated in the Report, Defendants' motion to dismiss should be granted.

The Court further finds an additional basis for dismissal is provided by 28 U.S.C. § 1915(e)(2)(B). As stated above, Plaintiff has been granted leave to proceed *in forma pauperis* in this action. Pursuant to the Prison Litigation Reform Act of 1996 ("PLRA"), a district court may dismiss an action filed *in forma pauperis* "at any time" if the court determines that the action is frivolous, malicious, or fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Plaintiff's claims fail to state a claim upon which relief may be granted and this action must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). This dismissal shall count as Plaintiff's first "prior occasion" under 28 U.S.C. § 1915(g).[1]

The Court also finds that Plaintiff's motion to file a supplemental complaint

---

1. 28 U.S.C. § 1915(g) provides as follows:

 In no event shall a prisoner bring a civil

action or appeal a judgment in a civil ac-

(Docket # 31) should be denied. Plaintiff filed his motion to amend or supplement almost two (2) years after Defendants filed the motion to dismiss, or alternative motion for summary judgment considered by the Magistrate Judge in the Report. After reviewing the three (3) supplemental grounds asserted by Plaintiff in his "Supplemental Complaint and Brief," the Court finds that to allow Plaintiff to proceed on the claims would be futile. If the proffered amendments fail to cure the deficiencies of the original complaint or if the newly asserted claims would be futile, denial of a motion to amend is appropriate. *See Scott v. Hern*, 216 F.3d 897, 906 (10th Cir.2000) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir.1997)). Therefore, Plaintiff's "motion for leave to file a supplemental complaint" shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The Report and Recommendation of the Magistrate Judge (Docket # 36) is **adopted and affirmed.**

2. Defendants' motion to dismiss (# 12–1) is **granted** and the complaint (# 1) is **dismissed.**

3. Defendant's motion for summary judgment (# 12–2) is **declared moot.**

4. Plaintiff's "motion for leave to file a supplemental complaint" (Docket # 31) is **denied.**

5. The Clerk is directed to **flag** this dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) as Plaintiff's first "prior occasion" for purposes of 28 U.S.C. § 1915(g).

6. This Order is a final order terminating this action.

## TABLE OF CONTENTS

I. FACTUAL BACKGROUND ............................................1278

II. STANDARD OF REVIEW .........................................1280
 A. MOTION TO DISMISS ....................................1280
 B. MOTION FOR SUMMARY JUDGMENT .............................1281
 C. 42 U.S.C. § 1983 DEPRIVATION OF CIVIL RIGHTS ...................1281
III. RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT .......................1282
 1. PLAINTIFF'S REQUEST FOR EXPUNGEMENT OF HIS MISCONDUCT CONVICTION AND RESTORATION OF CREDITS REVOKED [DEFENDANTS' PROPOSITION 1].....................1282
 2. THE CONSTITUTIONALITY OF PLAINTIFF'S DISCIPLINARY PROCEEDINGS [DEFENDANTS' PROPOSITION II] ...............1282
 (a) UNDER THE SUPREME COURT'S HOLDINGS IN HECK V. HUMPHREY AND EDWARDS V. BALISOK, THIS CIVIL RIGHTS CHALLENGE MUST BE DISMISSED .................1283
 (b) THE DISCIPLINARY PROCEEDINGS DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS ....................1284
 3. MEANINGFUL ACCESS TO THE COURTS [DEFENDANTS' PROPOSITION III].........................................1285
 (a) DEFENDANTS AFFORDED PLAINTIFF MEANINGFUL ACCESS TO THE COURTS ...................................1285

tion or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

 (b) IF ANY DEPRIVATION OCCURRED, PLAINTIFF HAS
FAILED TO DEMONSTRATE THAT IT HINDERED HIS
ABILITY TO PURSUE HIS LEGAL CLAIMS .....................1286
4. THE CONSTITUTIONALITY OF OPENING PLAINTIFF'S MAIL
[DEFENDANTS' PROPOSITION IV] ...............................1287
5. INFRINGEMENT OF RIGHT TO FREELY PRACTICE RELIGION
[DEFENDANTS' PROPOSITION V] ................................1288
 (a) THE INABILITY TO ATTEND JUMA'AH SERVICES AT A
CERTAIN TIME DOES NOT VIOLATE PLAINTIFF'S FREE
EXERCISE OF HIS RELIGION ...............................1288
 (b) PLAINTIFF HAS OFFERED NO PROOF THAT THE OSP'S
POLICY ON RELIGION IS NOT RELIGION–NEUTRAL .........1289
6. EQUAL PROTECTION VIOLATION CLAIM [DEFENDANTS'
PROPOSITION VI] .............................................1290
7. PRISON CONDITIONS UNDER THE EIGHTH AMENDMENT
[DEFENDANTS' PROPOSITION VII].............................1291
8. PROCEDURAL DUE PROCESS RIGHTS REGARDING PLAIN-
TIFF'S PROPERTY [DEFENDANTS' PROPOSITION VIII] .........1292
 (a) PLAINTIFF'S CLAIM IS INSUFFICIENT BECAUSE
ADEQUATE POST–DEPRIVATION REMEDIES ARE
AVAILABLE ............................................1293
 (b) ALTERNATIVELY, PLAINTIFF HAS FAILED TO STATE A
CLAIM AGAINST DEFENDANTS UNDER 42 U.S.C. § 1983
BECAUSE NEGLIGENCE IS NOT EQUIVALENT TO A
CONSTITUTIONAL TORT...................................1293
9. RETALIATION AGAINST PLAINTIFF FOR EXERCISING A
CONSTITUTIONAL RIGHT [DEFENDANTS' PROPOSITION IX]....1293
10. CONSPIRACY TO VIOLATE PLAINTIFF'S RIGHTS [DEFEN-
DANTS' PROPOSITION X].....................................1294
11. STATUTE OF LIMITATIONS BARRING PLAINTIFF'S COUNT X
CLAIMS [DEFENDANTS' PROPOSITION XI].....................1295
12. DEFENDANTS' QUALIFIED IMMUNITY [DEFENDANTS'
PROPOSITION XII] ..........................................1296
13. DEFENDANTS' ELEVENTH AMENDMENT IMMUNITY FROM A
SUIT FOR DAMAGES FOR ACTIONS IN THEIR OFFICIAL
CAPACITIES [DEFENDANTS' PROPOSITION XIII] ...............1298
14. PLAINTIFF'S ENTITLEMENT TO EXTREME REMEDY
REQUESTED [DEFENDANTS' PROPOSITION XIV] ...............1299

IV. RECOMMENDATION ............................................1300

V. OBJECTIONS................................................1300

***REPORT AND RECOMMENDATION***

JOYNER, United States Magistrate Judge.

Plaintiff filed a civil rights action pursuant to 42 U.S.C. § 1983, on October 5, 1999. By minute order dated April 2, 2002, Defendants' Motion to Dismiss and, in the alternative, Motion for Summary Judgment were referred to the undersigned United States Magistrate Judge. [Doc. Nos. 12–1, 12–2, 28–1].

Plaintiff is appearing *pro se* and asserts several constitutional violations by Defendants Ron Champion, James Saffle, and Ron Colliver during Plaintiff's incarceration at the Dick Conner Correctional Center ("DCCC") and the Oklahoma State Penitentiary ("OSP"). Plaintiff alleges that: (1) an invalid misconduct conviction lengthened his sentence; (2) his mail was opened and censored at DCCC; (3) Defendants are improperly forcing Plaintiff to pay disciplinary fines; (4) Defendants have

denied Plaintiff his right to practice Islam; (5) his equal protection rights have been violated by Defendants, who have discriminated against Plaintiff based on his African American race and his Muslim religion; (6) the conditions at OSP are cruel and unusual based on a lack of exercise privileges, inadequate food services, and a delay in medical and dental care; (7) Plaintiff was denied property upon transfer; (8) Defendants have retaliated against Plaintiff because he complained about officials; (9) Defendants denied Plaintiff access to the law library prior to his misconduct hearing; and (10) Defendants have conspired to classify Plaintiff as a maximum security inmate. [Doc. No. 1].

Plaintiff seeks the following remedies: (1) expungement of his misconduct violation; (2) punitive damages in the amount of $25,000.00 from each Defendant; (3) compensatory damages for the property allegedly confiscated by Defendants; and (4) permanent injunctive relief directing the Department of Corrections ("DOC") to change various policies and practices. [Doc. No. 1].

The U.S. Magistrate Judge has reviewed the briefs filed by the parties, Plaintiff's exhibits, Defendants' Special Report, and relevant case law. For the reasons discussed below, the U.S. Magistrate Judge recommends that the District Court **GRANT** Defendants' Motion to Dismiss [Doc. No. 12–1].

### *FACTUAL BACKGROUND* [1]

Plaintiff Leonard Renal Roberts is an Oklahoma inmate incarcerated, as of 1999, at OSP in McAlester, Oklahoma, serving sentences for Larceny After the Former Conviction of Two or More Felonies and Robbery with Firearms. *See* Defendants' Brief, Special Report, Attachment A. The

event giving rise to the civil rights claim currently before this Court involved a Menacing Staff conviction, which resulted in Plaintiff's loss of 365 earned credits, a $50.00 fine, and Plaintiff's ultimate transfer from DCCC to OSP.

On the morning of December 24, 1998, Muslim inmates were eating breakfast in the DCCC dining hall in observance of Ramadan. Food Service Supervisor Vera Patterson noticed that Plaintiff's tray did not contain food permitted by his diet. Patterson inquired about the discrepancy to the other food service workers, including Patricia Barnes. Patterson directed Plaintiff to the kitchen and ensured that his tray conformed with his appropriate diet. *See* Special Report, Attachment B. Patterson contends that upon Plaintiff's return to the dining hall, Plaintiff made the statement "[t]hey both need to be killed." Subsequently, Patterson issued an Offense Report to Plaintiff for Menacing, 05–5, which constitutes a Class X misconduct offense. *Id.* at Attachment C at 2. Patterson additionally completed an Incident Report describing the events that had transpired. *Id.* at Attachment D. Plaintiff claims that no such threat was ever made by him and that, even if such a statement were made, the statement in itself did not constitute a threat directed toward anyone.

Officer John Ware investigated the offense pursuant to DCCC's disciplinary policy. Defendants contend that Plaintiff was informed of his opportunity to present witness statements and evidence, along with his opportunity to request that a staff person be appointed to assist him. *Id.* at Attachment C at 3. Witness statements were taken from witnesses requested by Plaintiff, and Plaintiff was provided a staff representative. *Id.* at Attachment C at 5–

---

**1.** The facts summarized in this section are taken from both Plaintiff's and Defendants' pleadings and attachments. At this stage of the proceedings, no evidentiary materials are in the record.

7. Plaintiff presented no sworn affidavits during the investigation. Plaintiff indicated he would make a statement in court, and written witness statements were presented. *Id.* at Attachment C.

Plaintiff contends that the disciplinary investigator refused to obtain the statement of Officer Mills who could corroborate Plaintiff's version of events. Instead, Plaintiff claims that prison officials intimidated Officer Mills, prevented him from submitting a statement, and caused him to change his story and state that he was outside the dining hall on a smoking break when the alleged threat was made. Plaintiff further asserts that Food Service Supervisor Patterson initially charged another inmate, J.D. Robinson, with making the threat. Plaintiff contends that Officer Ware refused to accept sworn affidavits before the disciplinary hearing.

Plaintiff's disciplinary hearing was held January 8, 1999. The hearing officer subsequently determined that Plaintiff was guilty of the charged offense of Menacing and sentenced Plaintiff to thirty days of disciplinary segregation, imposed a $50.00 fine, and revoked 365 earned credits. *See* Special Report, Attachment C at 1. Plaintiff appealed his conviction to the facility head, and his appeal was denied. *Id.* Plaintiff then appealed to the Director's designee for reviewing appeals, who also denied his appeal. *Id.* at Attachment F.

Plaintiff claims that his disciplinary hearing was not fair and impartial. Rather, Plaintiff asserts that his hearing was delayed three times without any valid reason. He also claims that he was given four points for conviction of misconduct prior to his hearing, which was rescheduled at the last minute from January 4, 1999 to January 8, 1999.

In light of the fact that another food service employee had been killed at DCCC on November 13, 1998, Defendants concluded that Plaintiff's threat was a cause for extreme concern and determined that Plaintiff should be placed in a maximum-security facility. Plaintiff's unit team prepared a Facility Assignment Form arranging for Plaintiff's transfer. *Id.* at Attachment N; Administrative Investigation at 7.

Plaintiff alleges that the DCCC imposes "judicial-type fines" on inmates to fund the overcrowded facility. He contends that the facility imposes these fines and confiscates inmate money under the guise of "co-payment" charges for medical services, dental services, clothing, xeroxing costs, and the filing of grievances. Plaintiff asserts that policy dictates that if the money is not collected within twelve months, it is written off as uncollectible. Plaintiff argues that he has been charged co-payments, which should have been written off as uncollectible after one year, and for medications never received.

Defendants state that money collected from fines is deposited into the Inmate Welfare and Recreation Fund and is used to purchase various items including recreational equipment and to fund recreational activities benefitting the entire inmate population. No fines are diverted to the DOC. *See* Special Report, Attachment G. Plaintiff was assessed a $50.00 fine, pursuant to the range of allowable sanctions under a conviction for a Class X offense. *Id.* at Attachment H.

Plaintiff asserts that Defendant Champion instructed mail room staff at DCCC to open, read, and censor Plaintiff's mail via a memo directing such actions to be taken. Defendants note that mail room personnel never received a memo singling out Plaintiff's mail. However, mail room personnel have the authority, pursuant to policy, to open all incoming and outgoing non-privileged mail. *Id.* at Attachments L, M.

Following Plaintiff's misconduct proceedings, he was transferred to OSP. Shortly after his arrival, Plaintiff submit-

ted a grievance concerning his property, noting that his television was broken. *Id.* at Attachment I. The Inmate Property Inventory Form completed at the time of transfer indicated that the television was in good condition at that time. *Id.* at Attachment J.

Plaintiff also alleges that Defendants denied Plaintiff access to the prison law libraries. Under the DCCC's Access to Court policy, inmate research assistants are available to assist inmates and visit the Restrictive Housing Unit ("RHU"), where Plaintiff was housed, every weekday. *Id.* at Attachments O, P. Defendants argue that Plaintiff never complied with proper procedures for gaining access to the main library at OSP, but did submit a grievance with a "Request to Staff" and was subsequently granted physical access to the law library on July 2, 1999. *Id.* at Attachments S, Q, R.

Plaintiff claims his freedom to practice his religion of Islam has been violated. Defendants note that OSP policy mandates that all offenders have the opportunity to practice the religion of their choice and provides procedures for ensuring that this occurs. *Id.* at Attachment Y. Plaintiff claims it is unconstitutional to prohibit Muslims from gathering in groups larger than ten in number at one time. However, OSP policy dictates that only ten inmates are allowed to gather at one time for religious services. *Id.* Religious services at OSP are provided based on the availability of volunteers or staff to monitor services. Defendants claim that no outside Muslim has volunteered to monitor the services at OSP. *Id.* at Attachment U. Plaintiff's January 25, 2000 request to Warden Gibson for a more extensive Ramadan feast was denied based on the impossibility of catering to such a request inside the maximum-security facility. Gibson granted Plaintiff's request for weekly Islamic services. *Id.* at Attachment Z.

Plaintiff also contends that he has been subjected to cruel and unusual punishment based on a lack of exercise privileges, poor nutrition, and delays in medical and dental care. Defendants contend that, pursuant to policy, prisoners are permitted a minimum of one hour of exercise per day, five days a week, subject to inclement weather and security concerns. *Id.* at A–1. The food service meets the Recommended Daily Allowance and is served in proper portions, at optimum temperature, and under hygienic conditions. *Id.* at Attachments B–1, C–1. Defendants note that Plaintiff has received adequate dental care, despite his lack of cooperation on a few occasions, and that his heart condition has received appropriate attention at OSP, Griffin Memorial Hospital, and University Hospital. *Id.* at Attachment D–1.

According to Defendants, Plaintiff's transfer to OSP was solely the result of his threat to staff and not based on a conspiracy on the part of Defendants. Plaintiff filed a grievance concerning his transfer, to which Acting Warden Randy Cook responded. *See* Special Report, Attachment F–1, G–1.

## STANDARD OF REVIEW

### A. MOTION TO DISMISS

In a ruling on a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court will assume as true all well-pleaded facts in Plaintiff's complaint, view them in a light most favorable to Plaintiff, and make all reasonable inferences in favor of Plaintiff. *See Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir.1993).

When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate.... At

the same time, however, [a] constitutional claim under § 1983 should not be dismissed unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.

See *Dunn v. White,* 880 F.2d 1188, 1190 (10th Cir.1989) (citations omitted).

■ In reviewing complaints by *pro se* plaintiffs, pleadings are liberally construed, and the standard is "less stringent ... than formal pleadings drafted by lawyers." *Id.* at 1190. "At the same time, ... it is [not] the proper function of the district court to assume the role of advocate for the *pro se* litigant." *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

"When the *pro se* litigant is a prisoner, a court-authorized investigation and report by prison officials (referred to as a *Martinez* report) is not only proper, but may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall,* 935 F.2d at 1109. In reviewing a complaint, the Court need not accept as true those allegations that are conclusory in nature. Conclusory allegations state legal conclusions rather than factual assertions. *Fugate v. Unified Gov't of Wyandotte County,* 161 F.Supp.2d 1261, 1263 (D.Kan.2001) (citing *Hall,* 935 F.2d at 1110).

**B. MOTION FOR SUMMARY JUDGMENT**

A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The threshold inquiry is whether the pleadings present "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While conducting this analysis, the court resolves all doubt in favor of the plaintiff, the nonmoving party. *Conaway v. Smith,* 853 F.2d 789, 792 n. 4 (10th Cir.1988); *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir. 1980).

To survive a motion for summary judgment, the plaintiff "must establish that there is a genuine issue of material facts...." *Matsushita v. Zenith,* 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The substantive law determines which facts are material. *Id.* And the plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 585, 106 S.Ct. 1348. In addition, the evidence and inferences therefrom must be viewed in a light most favorable to the nonmoving party. *Conaway,* 853 F.2d at 792 n. 4. Unless the moving party can demonstrate its entitlement beyond a reasonable doubt, summary judgment must be denied. *Norton,* 620 F.2d at 1381.

**C. 42 U.S.C. § 1983 DEPRIVATION OF CIVIL RIGHTS**

■ To establish a claim under 42 U.S.C. § 1983, Plaintiff must allege facts demonstrating two elements: (1) Plaintiff must prove that the Defendant has deprived him of a constitutional right; and (2) Plaintiff must show that the Defendant deprived him of his constitutional right under color of state law. *See Doyle v.*

*Oklahoma Bar Ass'n,* 787 F.Supp. 189, 191 (W.D.Okla.1992).

## I. *RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DIS-MISS/MOTION FOR SUMMARY JUDGMENT*

### 1. PLAINTIFF'S REQUEST FOR EXPUNGE-MENT OF HIS MISCONDUCT CONVICTION AND RESTORATION OF CREDITS RE-VOKED [DEFENDANTS' PROPOSITION I].

Defendants argue that Plaintiff's requests for expungement of his misconduct conviction for Menacing a Staff Member and restoration of credits revoked as a result of the misconduct violation constitute improper claims of relief in a 42 U.S.C. § 1983 action. Defendants contend that these claims for relief challenge the length of Plaintiff's confinement and, as such, are proper only in a petition for writ of *habeas corpus.* Plaintiff counters that he is presenting a case of malicious intent to inflict harm and punishment based on his status as a Muslim and for pursuing his right to practice religion under the First Amendment.

In *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court distinguished between § 1983 civil rights actions and petitions for writ of *habeas corpus.* In so doing, the Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500, 93 S.Ct. 1827. An action under § 1983 is a proper remedy for a state prisoner challenging the constitutionality of the "conditions of his prison life, but not the fact or length of his custody." *Id.* at 499, 93 S.Ct. 1827.

■ Here, Plaintiff's request that his misconduct violation be expunged and re-voked credits restored constitutes a challenge to the length or duration of his custody because the restoration of credits would result in a speedier release from imprisonment. Therefore, an action under § 1983 is not a proper remedy for this challenge. The proper venue for Plaintiff to pursue his request is in a petition for writ of *habeas corpus.* Exhaustion of state remedies is required to commence a federal *habeas corpus* action. *See Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Plaintiff has failed to demonstrate that he has exhausted all of his state remedies in order to qualify for a federal *habeas corpus* action.

Plaintiff's contention that he is challenging the malicious intent of Defendants to inflict harm and punishment on Plaintiff based on his religious status and his pursuit of his right to practice religion will be analyzed under his claim of infringement of Plaintiff's right to practice religion and Plaintiff's retaliation claim. *See infra* Sections 5, 9. In terms of Plaintiff's request for expungement of his misconduct violation and restoration of lost credits, the undersigned agrees with Defendants and recommends that the District Court **DIS-MISS** this challenge as improper in a § 1983 action in that it challenges the length or duration of Plaintiff's imprisonment and is properly pursued only in a petition for writ of *habeas corpus.*

### 2. THE CONSTITUTIONALITY OF PLAIN-TIFF'S DISCIPLINARY PROCEEDINGS [DE-FENDANTS' PROPOSITION II].

Defendants assert that Plaintiff's challenge to the disciplinary proceedings, which subjected him to a misconduct violation and revocation of credits, is subject to dismissal under *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Alternatively, Defendants assert that, even if *Edwards* does not preclude

Plaintiff's claim, Plaintiff's challenge to the disciplinary proceedings is without merit based on Defendants' compliance with the constitutional standards for disciplinary proceedings.

### (a) Under the Supreme Court's Holdings in *Heck v. Humphrey* and *Edwards v. Balisok,* this Civil Rights Challenge must be Dismissed.

■ When a state prisoner seeks damages in a § 1983 lawsuit for the unlawful imposition of punishment resulting in the deprivation of a liberty interest, the Court must determine whether a judgment in favor of the prisoner in his § 1983 action would necessarily imply the invalidity of the punishment imposed. If a judgment in a § 1983 action would necessarily imply the invalidity of the prisoner's punishment, the § 1983 action must be dismissed unless the prisoner can demonstrate that the punishment has previously been invalidated.[2] If the prisoner's success in the § 1983 action would not demonstrate the invalidity of the underlying punishment, then the § 1983 action may proceed. *Heck v. Humphrey,* 512 U.S. 477, 483–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Edwards,* 520 U.S. at 645–46, 117 S.Ct. at 1587–88. In *Burnell v. Coughlin,* 975 F.Supp. 473 at 477 (W.D.N.Y. 1997), the Court noted that the United States Supreme Court sent a clear message in *Heck* and *Balisok:* "[A]n inmate cannot seek money damages for alleged deprivations arising out of a prison disciplinary hearing by commencing an action under § 1983 unless the results of that hearing already have been invalidated."

■ The undersigned finds that a judgment favorable to Plaintiff in this § 1983 case would necessarily imply the invalidity of the punishment imposed. Plaintiff alleges that he was not allowed to present certain witnesses who had exculpatory information in the form of other inmates who had drafted sworn statements. Plaintiff also argues that insufficient evidence exists to support the decisions reached in the disciplinary hearing. For example, Plaintiff vehemently claims that he never made the statement: "[t]hey both need to be killed." *See* Pl. Response at 16. Alternatively, Plaintiff argues that the statement does not constitute Menacing by definition where such a statement does not constitute a threat to kill or do bodily harm to anyone as it was not "directed" toward anyone.

Throughout his pleadings, Plaintiff emphatically asserts that he is innocent of the misconduct charge for Menacing leveled against him. Plaintiff contends the misconduct violation was bogus and a result of Defendants' desire to stifle Plaintiff's attempt to exercise his right to practice religion. Although Plaintiff raises several issues, bald allegations, and conclusory theories in his response to Defendants' Motion to Dismiss on this issue, Plaintiff's primary focus is on the erroneous outcome of the disciplinary hearing, which resulted in a misconduct conviction and loss of earned credits. That is, Plaintiff argues that the *wrong result* was reached in his disciplinary hearing, not just that improper procedures were employed. Resolution of this § 1983 case would, therefore, necessarily imply the invalidity of the punishment imposed at the disciplinary hearing. In an unpublished case with facts almost identical to those before this Court, the Tenth Circuit has found that very similar allegations would, if established, necessarily imply the invalidity of the underlying punishment. *See*

---

**2.** For example, the prisoner might be able to demonstrate that his punishment has been invalidated on direct appeal, in a *mandamus* action, or in a state or federal *habeas corpus* action.

*Janke v. Price,* 1997 WL 537962 (10th Cir.1997).

Plaintiff has additionally failed to demonstrate that the punishment imposed has previously been invalidated. Consequently, the undersigned recommends that this § 1983 action be **DISMISSED** unless and until Plaintiff's punishment is invalidated in an appropriate *mandamus* or *habeas corpus* action. *Heck,* 512 U.S. at 483–87, 114 S.Ct. 2364; *Balisok,* 520 U.S. at 645–46, 117 S.Ct. 1584; *Janke,* 1997 WL 537962, at **4–5.

### (b) The Disciplinary Proceedings did not Violate Plaintiff's Constitutional Rights

Alternatively, Defendants contend that, even if *Edwards v. Balisok* does not preclude Plaintiff's challenge to the disciplinary proceedings, Plaintiff's allegations should be dismissed because proper constitutional requirements were followed in the disciplinary proceedings. Under *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), an inmate facing prison disciplinary charges is entitled to advance written notice of the charges, an opportunity to call and present witnesses and evidence in his defense consistent with the goals of the institution, and a written statement by the fact-finder concerning evidence relied upon and the reasons for disciplinary action. *Id.* at 559, 94 S.Ct. 2963.

Defendants note that Plaintiff received a copy of the Offense Report, dated December 29, 1998, prior to his misconduct hearing. *See* Special Report, Attachment C at 2. Plaintiff received statements of evidence relied upon in addition to the rationale for the punishment imposed. *See* Special Report, Attachment C at 1. Plaintiff was allowed to submit testimony from witnesses in the form of written witness statements. For example, inmate Tony Hundy submitted a written statement relating the inci-

dent in question, as did Food Supervisor Patricia Barnes. *Id.* at Attachment C at 5–6. Following his hearing on the misconduct violation, Plaintiff was fined $50.00, an allowable sanction for a Class X offense (Menacing 05–5; fine $1–50). *See* Special Report, Attachment H, "Range of Allowable Actions." Therefore, Defendants assert that Plaintiff received the full extent of due process required under *Wolff.*

■ Plaintiff's response is unpersuasive. Plaintiff argues that he was not allowed to present testimony of witnesses in the form of drafted statements by other inmates present during the incident. However, as noted above, Plaintiff was allowed to submit a statement from a fellow inmate present during the meal and a statement from the Food Supervisor, Patricia Barnes, in his defense. Plaintiff also concludes that the hearing was a "sham" because he was assessed four misconduct points on January 4, 1999, the original date of the hearing, but the hearing was delayed until January 8, 1999. Furthermore, Plaintiff's allegations that Defendants prevented Officer Mills from giving a statement supporting Plaintiff's version of events is completely unsubstantiated in the record. Officer Mills noted in a December 31, 1998 statement that he was located outside the back door of the "chow hall" and did not witness the lunch incident. *See* Pl. Response, Attachment D. Plaintiff's bald allegation that Defendants' intimidated Mills to prevent him from testifying on behalf of Plaintiff has no support in the record. Such conclusory allegations and theories are insufficient to maintain a cause of action for constitutional violations in Plaintiff's disciplinary proceedings. Accordingly, the undersigned recommends that the District Court **DISMISS** Plaintiff's challenge to the constitutionality of his disciplinary proceedings based on *Edwards v. Balisok* and the fact

that due process was sufficiently afforded to Plaintiff.

### 3. MEANINGFUL ACCESS TO THE COURTS [DEFENDANTS' PROPOSITION III].

Plaintiff claims the DOC deprived him of meaningful access to the courts by denying him access to the prison law library prior to his misconduct hearing while he was housed in the RHU. Defendants assert that Plaintiff's claim should be dismissed because the DOC afforded Plaintiff adequate access to the prison law library, and Plaintiff has failed to demonstrate that any such denial actually hindered his efforts to pursue a legal claim. Based on the evidence in the record and the parties' briefs, the undersigned finds that Plaintiff has failed to demonstrate either that the DOC deprived him of access to the courts or that any such deprivation, if a deprivation did occur, hindered Plaintiff's efforts to pursue his legal claims.

### (a) Defendants afforded Plaintiff meaningful access to the courts.

■ Defendants contend that Plaintiff was provided access to the courts during his incarceration at DCCC, including the time he was housed in the RHU prior to his misconduct hearing. As evidence, Defendants provide the DCCC Field Manual regulations regarding inmate access to courts dated March 14, 1997. *See* Special Report, Attachment O. The Field Manual sets forth the requirements for standard reference materials and the employment of inmate research assistants to assist the inmates. *Id.* at Attachment O at 2–3. The regulations also provide for access for inmates housed in the RHU, which consists of a visit by a member of the law library staff or an inmate research assistant five days per week. Moreover, inmates facing a court-imposed or other legal deadline are afforded extra time in the law library upon written proof that a deadline exists. *Id.* at Attachment O at 5.

Norma Bullock, Law Library Supervisor at DCCC, submitted an affidavit attesting to the fact that inmate research assistants visit the RHU every day except Saturday, Sunday, and holidays to assist inmates with legal issues. During Plaintiff's housing in the RHU from December 24, 1998 to January 8, 1999, this schedule was adhered to with the exception of January 5 and January 6, at which time the facility was locked down. A record of the research assistants who performed their assigned tasks was submitted in conjunction with Bullock's affidavit. *See* Special Report, Attachment P.

Wayne Brakensiek, Law Library Supervisor at OSP, also provided a sworn statement attesting that all books remain in the law libraries, contrary to Plaintiff's assertion that reference materials have been removed. Brakensiek noted that the facility is in compliance with OSP–030115–01, pertaining to inmate access to courts/law library. Brakensiek stated that access is primarily afforded based on deadlines, and that "[a] review of the pending deadlines on the Plaintiff's present housing unit reveals that, had he requested direct access, it would have been provided. There is no record that [Plaintiff] has ever requested direct access to the main law library." *Id.* at Attachment Q.

Plaintiff submitted a request to Supervisor Bullock on January 6, 1999, inquiring about the procedure for getting cases, copies, and access to the law library. Bullock responded the next day and informed Plaintiff that he should send a request to Major Arnold if he had a verified deadline. *See* Pl. Response, Attachment T. Plaintiff would then be brought to the library after hours. On June 30, 1999, Plaintiff filed a grievance report form complaining about denial of access and the requirement that he pay for case copies. Plaintiff was informed that he needed to submit a visita-

tion request to receive direct physical access. *See* Special Report, Attachment S.

In arguing he was "denied his right to all legal resources while housed in the restrictive housing unit [at DCCC]," Plaintiff cites his request form in which Supervisor Bullock informed him of the procedure for gaining access to the library. *See* Pl. Response, Attachment T. Otherwise, Plaintiff's allegations that the inmate research assistants making the rounds had no authority to bring law books to the RHU or to make xerox copies, are conclusory allegations without any substantiation in the record. In terms of a denial of access while at OSP, Defendants provided the sworn affidavit of Supervisor Brakensiek, noting that Plaintiff never requested access to the main law library. *See* Special Report, Attachment Q.

Based on Plaintiff's bald allegations regarding denial of access to the courts via a denial of access to the prison law libraries, and Defendants' submission of evidence that Plaintiff was afforded adequate access, the undersigned recommends that Plaintiff's claims be **DISMISSED.**

### (b) If any deprivation occurred, Plaintiff has failed to demonstrate that it hindered his ability to pursue his legal claims.

Plaintiff contends that he was denied meaningful access to the courts while at DCCC and OSP, citing *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). As previously discussed, Plaintiff offers several unsubstantiated allegations regarding lack of access to the law libraries, a lack of trained research assistants, and an inmate's inability to obtain cases while locked in a cage separated from the books. Defendants assert that Plaintiff's claim should be dismissed because he has failed to satisfy the standard under *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), requiring a plaintiff to prove that alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

In *Lewis,* the Supreme Court discussed *Bounds* in the context of an access to courts claim, and found that *Bounds* did not create

> an abstract, freestanding right to a law library or legal assistance, [therefore,] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. [Rather,] "[i]nsofar as the right vindicated in *Bounds* is concerned, meaningful access to the courts is the touchstone, and *the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.*"

*Id.* at 351, 116 S.Ct. 2174 (emphasis added). In fact, the law library deficiencies contemplated by the *Lewis* Court included negative consequences resulting from the deficiencies, such as the dismissal of a complaint:

> for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, [a plaintiff] could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Id.* at 351, 116 S.Ct. 2174.

Plaintiff has failed to demonstrate that any of his legal claims were stymied or adversely impacted by the alleged deficiencies in the prison law libraries or legal assistance programs. In fact, Plaintiff was allowed to present a defense at his misconduct hearing for Menacing a Staff Member. Similarly, Plaintiff has not shown

that any of his pending federal court litigation has been stifled or dismissed based on deficiencies in the prison law libraries. Therefore, even if an alleged deprivation did occur in terms of denial of access, Plaintiff has failed to meet the standard under *Lewis* in demonstrating actual hindrance of the pursuit of his legal claims based upon a deficiency in the prison law libraries or legal assistance programs. Accordingly, the undersigned recommends that the District Court **DISMISS** Plaintiff's deprivation of access to the courts claim.

### 4. THE CONSTITUTIONALITY OF OPENING PLAINTIFF'S MAIL [DEFENDANTS' PROPOSITION IV].

Plaintiff claims that Defendants opened his mail in violation of his constitutional rights. Defendants counter that Plaintiff's mail has never been singled out and that prison officials have the authority to regulate all incoming and outgoing non-privileged mail so long as the regulation is reasonably related to a legitimate penological interest. Because Plaintiff's claim consists of nothing more than bald allegations unsubstantiated in the record, the undersigned recommends that the District Court DISMISS Plaintiff's claim pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiff specifically alleges that his mail, along with the mail of four other religious "organizers," was singled out by Defendant Champion, who gave "explicit" instructions to open Plaintiff's mail in a memorandum to mail room staff. Additionally, Plaintiff claims that legal documents sent to his wife for xeroxing came up missing in the mail. Plaintiff contends that a non-mail room worker determined that Plaintiff could not receive a letter from his son, Meko Roberts, after Defendant Champion instructed the non-mail room staff member to monitor mail. Finally, Plaintiff asserts that Defendant Champion's signature is on a directive to monitor the mail of four inmates, and that the law library supervisor signed the request to staff. *See* Pl. Response at 25.

Defendants argue that Plaintiff's mail has not been singled out from the mail of any other inmates based on his religious status. Defendants offer a sworn affidavit from Glenda McClary, Postal Supervisor at DCCC, stating that "no memo was ever received from Defendant Champion to open the Plaintiff's mail, or any other inmate's mail, because he was a Muslim spiritual leader." *See* Special Report, Attachment L. In fact, all non-privileged incoming and outgoing mail is subject to being opened and inspected. Defendants submit as evidence the DCCC Field Manual regulations governing the handling of incoming and outgoing non-privileged mail. *Id.* at Attachments L, M at 7. Under *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), a prison has the authority to regulate incoming and outgoing mail, and such regulations are "valid if [they are] reasonably related to legitimate penological interests." Regulations for screening mail promulgated to handle security concerns in a prison setting are certainly reasonably related to a legitimate penological interest.

Plaintiff's only evidence to substantiate his claims of constitutional infringement in the opening of his mail is a "Request to Staff" form submitted while at DCCC, questioning the reasons for not receiving a letter from his son, Meko Roberts. Meko's letter to Plaintiff was allegedly returned after some confusion as to whether it was sent from his home address or from a penal institution. Plaintiff complained to Postal Supervisor McClary that his mail was being censored. Plaintiff claimed that he was informed in the answer from an unnamed staff member that the determination that Plaintiff could not receive the letter was made by someone who did not

work in the mail room. McClary responded to Plaintiff's request form on January 5, 1998, informing Plaintiff that "Mr. Stewart was assigned by Warden Champion to supervise the activities of the mail room. All mail entering this facility is checked for contraband, etc. Contrary to your beliefs[,] no policies have been violated." *See* Pl. Response, Attachment J. The undersigned fails to see how this evidence supports Plaintiff's claim that his mail was singled out for censorship and opened in violation of his constitutional rights.

Because Plaintiff's claim that the opening of his mail violated his constitutional rights is unsupported in his factual allegations and evidence submitted, the undersigned recommends that the District Court **DISMISS** Plaintiff's claim, which consists of nothing more than bald and conclusory allegations insufficient to support a cause of action on this issue.

5. **INFRINGEMENT OF RIGHT TO FREELY PRACTICE RELIGION [DEFENDANTS' PROPOSITION V].**

Plaintiff asserts that Defendants violated the Free Exercise Clause of the First Amendment by infringing upon his right to freely practice his religion of Islam. Specifically, Plaintiff takes issue with OSP's limitation of Muslim inmates at a religious service to ten; that the facility only permits Jumu'ah services every other week; and that Jumu'ah services were moved from Sundays to Mondays. Defendants assert that Plaintiff's claims are without merit because the Institution's policies on religion are religion-neutral and every effort is made to cooperate with Muslim inmates to provide religious services.

(a) **The inability to attend Jumu'ah services at a certain time does not violate Plaintiff's free exercise of his religion.**

The undersigned finds *O'Lone v. Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), instructive on this issue and, as such, will quote from the case liberally. In reviewing a § 1983 claim for violation of free exercise rights resulting from Muslim prisoners' inability to attend weekly Jumu'ah services, the *Shabazz* Court noted that several general principles guided its consideration:

> First, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Rather, inmates clearly retain the protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Second, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security.

*Id.* at 348, 107 S.Ct. 2400 (citations omitted).

The Court noted that the appropriate balance of the above factors is committed to the judgment of prison administrators charged with and trained in running the particular institution. *Id.* at 349, 107 S.Ct. 2400. In fact, as an assurance that prison officials receive appropriate deference from the courts, the proper test in determining whether prison regulations alleged to have infringed upon a constitutional right is a "reasonableness" test, which is "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Shabazz*, 482 U.S. at 349, 107 S.Ct. 2400. Therefore, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to

legitimate penological interests." *Id.* (citing *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

Plaintiff argues that OSP's policy of forcing Muslim inmates to hold Jumu'ah at any other time than that designated under the strictures of Islam and dictated by the Koran violates his right to the free exercise of his religion. Moreover, Plaintiff takes issue with the fact that Muslim worshipers are supervised at all times, and that the maximum number allowed to congregate at one time is limited to ten. Plaintiff also offers his grievance form complaining about serving the Al–Eid Feast on the last day of Ramadan instead of the day after. *See* Pl. Response, Attachment O.

The *Shabazz* Court noted that, in determining whether prison officials acted in a reasonable manner in setting forth certain policies and regulations, certain factors should be examined. First, the challenged regulation must be logically connected to legitimate government interests invoked as justification for the regulation. *Shabazz,* 482 U.S. at 350, 107 S.Ct. 2400. Second, alternative means of exercising the right should remain open to prison inmates. *Id.* at 351, 107 S.Ct. 2400. Third, validity of the regulations is strengthened upon an examination of "the impact that accommodation of [the inmates'] asserted right would have on other inmates, on prison personnel, and on allocation of prison resources generally." *Id.* at 352, 107 S.Ct. 2400.

■ In applying these factors to Plaintiff's challenges in this case, the undersigned finds that OSP's regulations are reasonably related to legitimate penological interests, including security safeguards and the orderly administration of prison activities. Moreover, although the *Shabazz* Court noted that "[t]here are, of course, no alternative means of attending Jumu'ah" when it occurs at a different time than that based on the inmates' religious beliefs, the undersigned notes that evidence in the record establishes that inmates are permitted to participate in other Muslim religious ceremonies on a regular basis. The Supreme Court stated that while it "in no way minimize[s] the central importance of Jumu'ah to [the Muslim inmates], [it is] unwilling to hold that prison officials are required by the Constitution to sacrifice legitimate penological objectives to that end." *Shabazz,* 482 U.S. at 351–52, 107 S.Ct. 2400.

Rather, the central focus is on whether inmates are deprived of all means of expression. As will be discussed in detail below, the undersigned notes that various other Muslim activities are provided for and available to Muslim inmates, such as weekly religious services, issuance of different meals, and special arrangements made in observance of the Ramadan fasting season. Finally, allowing inmates to attend Jumu'ah on another day might not only adversely impact other inmates, who could perceive preferential treatment of one group, but could also act as a financial drain on prison resources and personnel.

Therefore, the undersigned takes its cue from the Supreme Court in *O'Lone v. Shabazz,* in which the Court took the opportunity to reaffirm its refusal "even where claims are made under the First Amendment, to 'substitute [its] judgment on … difficult and sensitive matters of institutional administration,' for the determinations of those charged with the formidable task of running a prison," and recommends that Plaintiff's First Amendment claim be DISMISSED. *Id.* at 353, 107 S.Ct. 2400.

**(b) Plaintiff has offered no proof that the OSP's policy on religion is not religion-neutral.**

Additionally, Plaintiff has failed to substantiate his Free Exercise Clause claim

by showing that OSP's policy on religion is not religion-neutral. Defendants cite *Thiry v. Carlson*, 78 F.3d 1491, 1496 (10th Cir.1996), for the proposition that if a law is religion-neutral and generally applicable, it does not violate the Free Exercise Clause even if it incidentally affects religious practice. The undersigned is persuaded that Plaintiff has failed to offer anything more than bald allegations that Muslim worshipers are singled out for disparate treatment in practicing their religion at OSP.

Defendants offer several documents relating to religious practice at the institution. The evidence indicates that Muslims have been allowed to actively participate in religious worship. Similarly, nothing indicates that the policy is not religion-neutral. Defendants note that religious services are based upon the number of volunteers available to monitor the inmates. The number of prisoners allowed to attend a religious service is limited to ten at a time. *See* Special Report, Attachment Y. Thus far, no Muslims from outside the prison have volunteered to come to OSP. *Id.* at Attachment U. Therefore, Muslim religious services are conducted by an inmate leader.

Monthly chaplain reports covering February 1999 to December 1999, illustrate that Muslims actively participated in religious services despite the absence of outside volunteers to monitor services. In fact, the monthly reports illustrate that the number of services held per month ranged from 13 to 26 during that period. *Id.* at Attachment V. Defendants also provided schedules delineating the regular religious services available for all faiths in the general population, even for the high-maximum-security H Unit, along with the general religious regulations in the Field Manual. *See* Special Report, Attachments W, Y.

In light of Plaintiff's submission of only conclusory allegations regarding an in-fringement of his right to exercise religion, and evidence illustrating that OSP's policy on religion is reasonably related to a legitimate penological interest, is religion-neutral, and that Muslim inmates have actively participated in religious services, the undersigned recommends that the District Court DISMISS Plaintiff's claims.

## 6. EQUAL PROTECTION VIOLATION CLAIM [DEFENDANTS' PROPOSITION VI].

Plaintiff alleges that Defendants have discriminated against him because he is an African American and a Muslim. Defendants assert that Plaintiff has failed to satisfy his burden of proof in demonstrating an equal protection violation. Alternatively, Defendants contend that Plaintiff's complaints consist of nothing more than isolated events solely resulting from Plaintiff's behavior and are barred by the statute of limitations because they occurred in the period from 1993 to 1996.

In order to establish an equal protection violation, Plaintiff must show a "discriminatory purpose" leading to disparate treatment. *See Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). " 'Discriminatory purpose' implies more than intent as volition or intent as awareness of consequences.... It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable group." *Id.* at 279, 99 S.Ct. 2282 (citations omitted). Isolated events adversely affecting an individual are not presumed to be violations of the equal protection clause. *See Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir.1980).

Plaintiff's complaint and attachments cited in support fail to establish a discriminatory purpose on the part of Defendants or that any disparate treatment was af-

forded Plaintiff as a result of his race or religion. The incidents referred to by Plaintiff constitute isolated, unrelated events from which Plaintiff received misconduct violations based on his own behavior. Plaintiff submits nothing more than unsupported allegations of improper intent of Defendants, allegations which are deficient in establishing a claim under § 1983.

Moreover, the undersigned has determined in Section 11, *infra*, that Plaintiff's complaints are barred by a two-year statute of limitations analogous to personal injury actions. Therefore, to the extent that the incidents cited in support of Plaintiff's equal protection violation claim occurred between the years of 1993 and 1996, they are barred at the time of his filing date of October 5, 1999. *See infra* Section 11 for a more complete discussion of the specific events alleged. Accordingly, the undersigned recommends that Plaintiff's equal protection violation claim be DISMISSED.

### 7. PRISON CONDITIONS UNDER THE EIGHTH AMENDMENT [DEFENDANTS' PROPOSITION VII].

Plaintiff asserts he has been subjected to cruel and unusual punishment at the hands of Defendants as a result of his transfer to OSP, an institution which he contends is for "incorrigible" inmates. Plaintiff claims OSP is overcrowded and insufficiently suited to meet the needs of inmates with serious health problems, such as Plaintiff's chronic heart condition. Plaintiff's grievances include: a lack of sufficient exercise, lack of proper nutrition, and delays in medical and dental care. Defendants counter that Plaintiff's complaints regarding various unpleasant conditions fail to meet the high standard required to establish an Eighth Amendment violation.

For a prison official to be liable for violating an inmate's right to humane conditions in confinement, the alleged deprivation must be objectively "sufficiently serious." *See Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Moreover, "only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 298, 111 S.Ct. 2321. The prison official must display a "sufficiently culpable state of mind," which amounts to "deliberate indifference" to a substantial risk of serious harm to the inmate. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Wilson*, 501 U.S. at 297, 111 S.Ct. 2321. Finally, a prison official is liable only if he "knows of and disregards an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. "[I]n order to state a claim [under § 1983], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *See Twyman v. Crisp*, 584 F.2d 352, 355 (10th Cir.1978).

Plaintiff first complains about a lack of proper exercise at OSP. He contends that although policy provides for one hour of outside exercise, five days a week, inmates do not regularly receive the allotted exercise privileges. Defendants counter that the facility permits regular exercise, citing the OSP Field Manual regulations on inmate exercise. *See* Special Report, Attachment A–1 ("Inmate will be allowed a minimum of one (1) hour per day, five (5) days per week, outdoors, unless security, safety, or weather conditions dictate otherwise."). Plaintiff provides no further proof that exercise privileges are being withheld and, as such, his unsupported allegations regarding a lack of exercise are insufficient. Moreover, Plaintiff has failed to establish that Defendants knew of and disregarded an excessive risk to his health or safety.

Plaintiff additionally contends that OSP's food service is inadequate, claiming that the prison is not in compliance with the Master Menu, that the portion control is improper, and that workers do not employ hygienic methods in food handling. Defendants maintain that the food service at OSP meets or exceeds the "Recommended Dietary Allowances of the National Academy of Sciences," and is reviewed annually by a registered dietician for nutritional adequacy. Furthermore, proper food portions are served at optimum temperature. *Id.* at Attachment B–1 ("The master menu will provide for three meals daily, of which two must be hot. . . . Food will be prepared with a minimum of hand contact . . . prepared on food-contact surfaces and with utensils, which are clean and have been sanitized."). Defendants provide the master menus containing the signature of a registered dietician for five weeks to illustrate various food options and portions. Similarly, Defendants submit the sworn affidavit of Don Wagenknecht, Food Service Superintendent, attesting that all meals served are in compliance with the master menu, in proper portions, using hygienic methods, and at optimum temperature in insulated carts to maintain heat. *See* Special Report, Attachment C–1.

Plaintiff's only support for his contentions regarding poor food service, other than conclusory allegations, is a January 22, 2000 *Tulsa World* article in which attorney Louis Bullock alleged that the DOC "has filed false reports with the court regarding its compliance with an April 23 court order." *See* Pl. Response, Attachment Q. The article discussed the potential settlement of *Battle v. Anderson* and outlined the requirements for ending the suit, including bringing medical care up to standards. However, Plaintiff has failed to convince the undersigned that any wrongdoing on the part of OSP officials occurred in the present case. Based on Plaintiff's unsupported allegations, Defendants' evidence submitted showing compliance, and the high standard for establishing an Eighth Amendment violation, the undersigned finds that Plaintiff's claim of poor food service conditions is without merit.

Finally, Plaintiff's contention that he has received inadequate medical and dental care is groundless. Defendants note that Plaintiff's dental records demonstrate more than adequate dental care, despite Plaintiff's uncooperativeness on a few occasions. Defendants offer the affidavit of Kathy Eckenrode, DOC Health Services Administrator at OSP, who reviewed and summarized Plaintiff's dental records, indicating that Plaintiff's dental care has been sufficient. *See* Special Report, Attachment D–1. Eckenrode also discussed medical records pertaining to Plaintiff's heart condition, and his treatment at OSP, Griffin Memorial Hospital, and University Hospital. *Id.*

In light of Plaintiff's failure to allege anything more than unsupported claims concerning a lack of exercise privileges, poor food services, and inadequate medical and dental care, the undersigned recommends that the District Court **DISMISS** Plaintiff's claims because they fail to establish that he was deprived of "the minimal civilized measure of life's necessities," and, as such, fail to demonstrate a violation under the Eighth Amendment. *See Wilson*, 501 U.S. at 298, 111 S.Ct. 2321.

8. **PROCEDURAL DUE PROCESS RIGHTS REGARDING PLAINTIFF'S PROPERTY [DEFENDANTS' PROPOSITION VIII].**

Defendants assert that Plaintiff has failed to show that DOC officials violated his procedural due process rights to his property. Plaintiff argues that, on December 24, 1998, he was placed in the RHU

and prevented from personally packing his property. Instead, prison officials packed Plaintiff's property and turned it over to the property room supervisor. Plaintiff was transferred on January 10, 1999 to OSP, and his property arrived either that same day or shortly thereafter. Plaintiff contends that he received notice from the OSP property room supervisor that his television set had arrived but was broken. Plaintiff also argues that other items were missing, such as his hot pot, prayer oils, and sweat top. Plaintiff asserts that he utilized all post-deprivation remedies of which he was aware and that were afforded by the DOC.

**(a) Plaintiff's Claim is Insufficient because Adequate Post–Deprivation Remedies are Available.**

 Plaintiff's generalized allegation that his television was broken sometime before or during its transfer to OSP and that other items were lost fails to establish that an employee of the state has deprived him of his personal property. Moreover, Plaintiff has not demonstrated a lack of post-deprivation remedies available to him. Plaintiff attempted to lodge a complaint within the prison system on February 18, 1999, and was instructed on the proper procedure for so doing. His grievance and appeal of the warden's decision were reviewed and relief was denied on July 16, 1999. *See* Pl. Response, Attachments S, S–1, S–2. Defendants note that Plaintiff had at his disposal other post-deprivation remedies, such as the Oklahoma Governmental Tort Claims Act and Oklahoma replevin statutes. *See Hudson v. Palmer,* 468 U.S. 517, 533–35, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Therefore, in light of adequate post-deprivation remedies available to Plaintiff, the undersigned finds that the alleged deprivation of Plaintiff's television and any other items allegedly lost upon transfer did not violate his procedur-al due process rights and recommends that this challenge be **DISMISSED.**

**(b) Alternatively, Plaintiff has Failed to State a Claim against Defendants under 42 U.S.C. § 1983 because Negligence is not Equivalent to a Constitutional Tort.**

 Defendants also move to dismiss Plaintiff's procedural due process challenge on the ground that if any wrongdoing on the part of prison officials existed, it amounted to nothing more than negligence. Mere negligence does not rise to the level of a constitutional tort required under § 1983. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Murrell v. School Dist. No. 1, Denver, Colo.,* 186 F.3d 1238, 1250 (10th Cir. 1999). In order to satisfy his prima facie case for a § 1983 violation, Plaintiff must show not only that his constitutional rights were violated under color of state law, but also that Defendants subjected or caused Plaintiff to be subjected to a deprivation of his constitutional rights. *See* 42 U.S.C. § 1983.

In light of the fact that Plaintiff maintained adequate post-deprivation remedies for the loss of his property, and that the alleged violation amounted, at most, to mere negligence, which is not equivalent to a constitutional tort as required in a § 1983 claim, the undersigned recommends that the District Court DISMISS Plaintiff's claim pursuant to Fed.R.Civ.P. 12(b)(6).

**9. RETALIATION AGAINST PLAINTIFF FOR EXERCISING A CONSTITUTIONAL RIGHT [DEFENDANTS' PROPOSITION Ix].**

Plaintiff asserts that Defendants retaliated against him for exercising a constitutional right, charged him with misconduct, and transferred him because he had filed administrative grievances. Defendants

counter that Plaintiff has failed to satisfy his burden of proof that, "but for" a retaliatory motive, he would not have been charged with Menacing and would not have been transferred.

"It is well established that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *See Smith v. Maschner*, 899 F.2d 940, 947–48 (10th Cir.1990). However, "a plaintiff must produce evidence of improper motive, *rather than relying upon allegations,* to defeat a summary judgment motion." *Id.* at 948 n. 2 (emphasis added). In fact, Plaintiff must show that " 'but-for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Id.* at 949–50.

Plaintiff proffers a laundry list of unsupported allegations to support his claim of retaliation for attempting to exercise his constitutional rights by filing administrative grievances. Plaintiff contends the retaliation was a result of his complaints regarding theft, discriminatory practices against Islamic inmates, denial of access to legal materials, inability to call witnesses or present sworn affidavits at his hearing, the prevention of Correctional Officer Mills from relaying a conversation concerning Plaintiff's innocence, completion of paperwork regarding Plaintiff's guilt and conviction prior to the conclusion of a disciplinary investigation and hearing, and an erroneous recommendation that Plaintiff be transferred to maximum security. *See* Pl. Response at 32–33.

Defendants maintain that the sole reason for Plaintiff's misconduct conviction and subsequent transfer was his Menacing violation in which staff members overheard him make the statement, "[t]hey both need to be killed." *See* Special Report, Attachments B, C (affidavit by Patricia Barnes and Misconduct Report/Offense Report

statement by Vera Patterson). Menacing constitutes a Class X Offense. Defendants argue that Plaintiff was chosen for transfer solely because staff and officials believed he posed a risk requiring a higher security level. *Id.* at Attachment F.

Despite Plaintiff's numerous allegations as to why he was transferred in retaliation for exercising his rights, he fails to substantiate any of his claims. At a minimum, Plaintiff has failed to demonstrate that "but for" a retaliatory motive on the part of prison officials, his misconduct charge and subsequent transfer would not have occurred. Plaintiff's assertion that the mere fact that another inmate was initially suspected of making the comment illustrates that the substitution of Plaintiff as wrongdoer was motivated by retaliation is unpersuasive. Nothing in the record supports this contention. Moreover, Defendants provide statements from Vera Patterson in her Misconduct Report noting that Plaintiff made the statement, "[t]hey both need to be killed," and from Patricia Barnes that she was informed of the threatening statement after she and Patterson had examined Plaintiff's food tray. *Id.* at Attachments B, C.

Because Plaintiff has presented only bald allegations that his misconduct charge and subsequent transfer were prompted by a retaliatory motive on the part of Defendants for Plaintiff's filing administrative grievances, and because Plaintiff has failed to show that, "but for" a retaliatory motive, he would not have been charged with Menacing or subsequently transferred, the undersigned recommends that the District Court **DISMISS** Plaintiff's claim.

10. CONSPIRACY TO VIOLATE PLAINTIFF'S RIGHTS [DEFENDANTS' PROPOSITION X].

The crux of Plaintiff's complaint is that Defendants conspired to have him classi-

fied as a maximum-security inmate. Defendants contend that Plaintiff's classification as a maximum-security inmate was the sole result of his Menacing charge and conviction. Moreover, Defendants assert that Plaintiff's claim is vague, conclusory, fails to establish a conspiracy, and does not demonstrate an actual deprivation of federally protected rights.

A § 1983 conspiracy claim involves a "conspiracy to violate a right protected by § 1983; in other words, a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n. 6 (10th Cir.1990). Plaintiff must prove not only a conspiracy, "but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Id.* at 1449. The *Dixon* Court noted that "[t]his is because the essence of a § 1983 claim is the deprivation of the right rather than the conspiracy." *Id.*

■ Plaintiff asserts that Defendants conspired to have him classified as a maximum security inmate to prevent him from "pursuing valid litigation against them for racial and religious discrimination." *See* Doc. No. 1 at Count IX. Plaintiff challenges the validity of the Menacing charge and the hearing from which his conviction resulted. However, Plaintiff's conclusory allegations fail to demonstrate a conspiracy on the part of Defendants to upgrade his classification. In fact, the record illustrates that Plaintiff's change of classification resulted from his statement, "[t]hey both need to be killed," reported by Vera Patterson. *See* Special Report, Attachment F. Plaintiff's allegations that Defendants first accused another inmate and later decided Plaintiff made the statement in order to further their conspiracy and rid themselves of the threat of lawsuits by Plaintiff is completely unsubstantiated.

Mere conclusory allegations of conspiracy, unsupported by a factual showing of any type of agreement and concerted action amongst Defendants, are insufficient to support a conspiracy action. *See Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994); *Sooner Products Co. v. McBride*, 708 F.2d 510 (10th Cir.1983).

■ Plaintiff has further failed to demonstrate a violation of his federally protected rights. To the extent that Plaintiff alleges violation of his rights in his classification as a maximum-security inmate, which resulted in his transfer to OSP, his claim is insufficient. In *Meachum v. Fano*, 427 U.S. 215, 226–27, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Supreme Court held that the due process clause does not protect a prisoner from intrastate prison transfers. *See also Twyman v. Crisp*, 584 F.2d 352, 355 (10th Cir.1978). An inmate possesses no constitutional right to be incarcerated in the facility of his choice. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

Plaintiff has failed to demonstrate an agreement and concerted action on the part of Defendants tending to show a conspiracy to have Plaintiff classified as a maximum-security inmate. The record demonstrates that Plaintiff's classification and ultimate transfer to OSP resulted from his menacing statement to staff. Moreover, Plaintiff has failed to show that he has a federally protected right not to be classified as a maximum-security inmate or transferred within the Oklahoma state prison system. Accordingly, the undersigned recommends that Plaintiff's conclusory conspiracy claim be **DISMISSED**.

**11. STATUTE OF LIMITATIONS BARRING PLAINTIFF'S COUNT X CLAIMS [DEFENDANTS' PROPOSITION XI].**

In Count X of Plaintiff's Complaint, he alleges various incidents occurred between

the years of 1993 and 1996, in which prison officials participated in a consistent pattern of harassment and discriminatory acts directed toward Plaintiff and the Muslim population. Specifically, Plaintiff contends that Defendant Colliver requested that Plaintiff bring him the minutes from an islam inmate meeting. However, Plaintiff contends that when he attempted to take a copy of the minutes to Colliver, Plaintiff received a misconduct violation for his presence in an unauthorized area without a pass. *See* Special Report, Attachments J–1, K–1 (no pass), L–1 (appeal denied). Additionally, Plaintiff claims that he was told to keep his barber shop kit with him, but was later cited with misconduct for possession of those tools. *See* Special Report, Attachment H–1 (affidavit of Defendant Colliver denying knowledge of Plaintiff's allegations of bogus misconduct for presence in an unauthorized area or possession of barber tools). Plaintiff notes that he was transferred against his objections to DCCC after open heart surgery. Plaintiff asserts that these various incidents all culminated in the Menacing Staff conviction and his subsequent transfer to OSP. Defendants counter that Plaintiff's claim is barred by a two-year statute of limitations.

Defendants cite *Hunt v. Bennett*, 17 F.3d 1263 (10th Cir.1994), for their proposition that Plaintiff's claims are barred by a two-year statute of limitations. In *Hunt*, the Tenth Circuit held that " § 1983 claims are best characterized as personal injury actions" and applied the "relevant state statute of limitations applicable to such actions." *Id.* at 1265 (citing *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). Oklahoma's relevant statute of limitations for personal injury actions is two years under 12 Okla. Stat. § 95. *See also Abbitt v. Franklin*, 731 F.2d 661, 663 (10th Cir.1984) ("the most analogous Oklahoma statute is clear-

ly the two-year limitations period for an injury to the rights of another.").

■■■ Although Plaintiff attempts to argue that these incidents constitute a continuing pattern of discrimination and harassment, ultimately culminating in his Menacing conviction and transfer to OSP, the undersigned finds nothing in the record to indicate that these incidents constitute anything more than unrelated acts of misconduct on the part of Plaintiff. Accordingly, the undersigned recommends that Plaintiff's claims pertaining to incidents occurring between 1993 and 1996, before the filing of Plaintiff's October 5, 1999 complaint, be **DISMISSED** as barred by the two-year statute of limitations.

### 12. DEFENDANTS' QUALIFIED IMMUNITY [DEFENDANTS' PROPOSITION XII].

Defendants assert qualified immunity as employees of the DOC or officials of the state of Oklahoma from violations alleged by Plaintiff. Defendants maintain that Plaintiff has failed to show that they violated any of Plaintiff's clearly established federal rights. Conversely, Defendants claim that they acted appropriately at all times, including Plaintiff's disciplinary proceedings, transfer, in affording Plaintiff access to the law library, and in providing Plaintiff access to religious services.

A public official or employee is entitled to qualified immunity unless a "clearly established" federal right of which a reasonable person would have known is shown to have been violated. *See Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). The "clearly established" law standard is a high standard, and is predicated on a finding that, in light of the pre-existing law, the unlawfulness is apparent. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Medina v. City and County of Denver*, 960 F.2d 1493, 1498–99 (10th Cir.1992). Quali-

fied immunity is an "immunity from suit rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial." *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

The Ninth Circuit opined that "[t]he rule of qualified immunity 'provides ample support to all but the plainly incompetent or those who knowingly violate the law.'" *See Schroeder v. McDonald,* 41 F.3d 1272, 1279 (9th Cir.1994). Moreover, the *Schroeder* Court noted that *"regardless of whether the constitutional violation occurred,* the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." *Id.* (emphasis in original). Thus, the test for qualified immunity is two-fold: (1) Was the law governing the official's conduct clearly established, and (2) Under that law, could a reasonable officer have believed the conduct was lawful? *Id.*

Plaintiff's asserted error in his disciplinary hearing has been previously analyzed under Section 2, *supra.* Although denying Plaintiff due process in his disciplinary hearing would constitute a violation of "clearly established" federal rights, the undersigned previously recommended that Plaintiff's due process challenge be dismissed under *Heck v. Humphrey* and *Edwards v. Balisok* and because Plaintiff was afforded due process in his disciplinary proceedings. Similarly, regarding Plaintiff's claim that he was denied access to the courts via a denial of access to the prison law libraries, the undersigned notes that denial of access to the courts would constitute a "clearly established" federal right. Again, however, the undersigned found that Plaintiff was afforded adequate access to the law libraries and recommended dismissal of his claim. *See supra* Section 3.

The same is true for Plaintiff's First Amendment right to practice his religion challenge. *See supra* Section 5.

■ As for Plaintiff's claim that his rights were violated in his transfer to OSP, the undersigned finds *Schroeder* instructive. Obviously, Defendants cannot transfer Plaintiff from one institution to another to punish him for exercising his constitutional right to pursue litigation in the courts. Therefore, under *Schroeder,* the analysis becomes whether a reasonable prison official could have believed the conduct was lawful. *Schroeder,* 41 F.3d at 1279. The *Schroeder* Court found that:

> [a] reasonable prison official could have believed the transfer was lawful if he were advancing a legitimate penological goal and his means were narrowly tailored to achieve that goal ... Legitimate goals of a correctional institution include the preservation of internal order and discipline and the maintenance of internal security.

*Id.* at 1279. The Court held that the prison officials could have believed the transfer of Schroeder from a minimum security facility to a medium security facility was lawful, and that defendants were entitled to qualified immunity from the retaliation claim. *Id.*

The undersigned has previously recommended dismissal of Plaintiff's retaliation claim, noting that the record indicates that the sole reason for Plaintiff's transfer was his Menacing conviction. The holding in *Schroeder* provides further support for recommending dismissal because the prison officials could have reasonably believed they were advancing legitimate penological goals of prison security, and that their actions were narrowly tailored to meet those goals.

Because Defendants are employees or officials of the state of Oklahoma who ei-

ther did not violate Plaintiff's "clearly established" federal rights, or could have reasonably believed they were advancing legitimate penological goals and that their means were narrowly tailored to meet those goals, the undersigned recommends Plaintiff's claims be **DISMISSED** based on Defendants' qualified immunity.

### 13. DEFENDANTS' ELEVENTH AMENDMENT IMMUNITY FROM A SUIT FOR DAMAGES FOR ACTIONS IN THEIR OFFICIAL CAPACITIES [DEFENDANTS' PROPOSITION XIII].

Defendants Champion, Saffle, and Colliver, employees of the DOC and the State of Oklahoma, assert that they are immune from a suit for damages for actions taken in their official capacities under the Eleventh Amendment. Plaintiff's only response is that he is suing Defendants in both their official and individual capacities. Although an action may be brought against Defendants in their individual capacities, Plaintiff has presented no argument justifying his action against Defendants for actions taken in their official capacities, from which they are immune under the Eleventh Amendment.

A suit against Defendants in their official capacities as state officials is no more than a suit against the State itself and must be dismissed. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Under the Eleventh Amendment, the State of Oklahoma is immune from suit in federal court, and therefore the lawsuit against Defendants in their official capacities should be dismissed. "[A] State is not a person within the meaning of § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, although "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, ... it does not provide a federal

forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66, 109 S.Ct. 2304. Moreover, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citations omitted). *See also Eastwood v. Dep't of Corrections of State of Okla.,* 846 F.2d 627 (10th Cir.1988) (suit against the Department of Corrections barred by the Eleventh Amendment which prohibits suits in federal court against a state by its own citizens or by citizens of another state). The State of Oklahoma has not expressly waived its Eleventh Amendment immunity. *See Nichols v. Dep't of Corrections,* 631 P.2d 746, 750–51 (Okla.1981). Therefore, the State is immune from suit by the Plaintiff in federal court.

In their Motion to Dismiss/Motion for Summary Judgment, Defendants contend that Plaintiff's suit against them for acts in their official capacities is barred by Eleventh Amendment immunity. As stated, Plaintiff has sued Defendants Champion, Saffle, and Colliver in their official capacities. To the extent that a suit against Defendants in their official capacities constitutes a suit against the State, Plaintiff is prohibited from bringing such an action in federal court. *Will,* 491 U.S. at 64, 109 S.Ct. 2304 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). Accordingly, the undersigned recommends that the District Court **DISMISS** all claims against Defendants Champion, Saffle, and Colliver for acts performed in their official capacities.

14. PLAINTIFF'S ENTITLEMENT TO EXTREME REMEDY REQUESTED [DEFENDANTS' PROPOSITION XIV].

Plaintiff seeks injunctive relief forcing the DOC to change various policies and practices. *See* Pl. Complaint at 4–a. Plaintiff submits a laundry list of relief to which he believes he is entitled, including: (1) expungement of his misconduct violation for Menacing; (2) restoration of earned credits and monies revoked as a result of his misconduct violation; (3) punitive damages from Defendants in the amount of $25,000.00 each; (4) $524.00 in compensatory damages from Defendants Champion and/or Saffle for the destruction of Plaintiff's television; (5) $217.00 for money "confiscated" from Plaintiff's account and $252.00 for replacement of the television; (6) $20.00 for the replacement of Plaintiff's hot pot; (7) $25.00 reimbursement for Plaintiff's prayer oils; and (8) $10.00 for Plaintiff's sweat top.

Plaintiff also seeks relief: (1) requiring the DOC to eliminate "judicial-type fines" for misconduct violations; (2) eliminating the procedure allowing for one person to act as a disciplinary committee; (3) prohibiting DOC confiscation of monies received from family and friends; (4) providing for better medical and dental attention; (5) requiring compliance with the Master Menu for food served at OSP; (6) eliminating the disparate treatment of Christians and Muslims by the chaplains at DCCC and OSP; and (7) affording inmates a fair, neutral, and unbiased appellate process independent of Defendant Saffle's office.

■ The issues relating to expungement, restoration of credits, and the $50.00 fine were previously discussed in Section 1 of this Report and Recommendation. Plaintiff's due process rights concerning his property were analyzed in Section 8, *supra.* Accordingly, the focus of this section will be on Plaintiff's request for permanent injunctive relief directing the DOC to change various policies and practices. In order for a moving party to receive permanent injunctive relief from an alleged constitutional violation, the moving party must demonstrate that his constitutional rights have been violated. *See Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Supreme Court considered federal injunctive relief a remedy reserved for extreme situations.

■ Plaintiff's request for injunctive relief forcing the DOC to change its policies and practices is unpersuasive based upon Plaintiff's inability to proffer anything more than bald allegations that his constitutional rights have been violated. As such, the extreme remedy of federal injunctive relief is not appropriate. For example, Plaintiff has offered nothing more than unsupported allegations regarding a lack of compliance with the master menu for food services, poor medical and dental care, discrimination against the Muslim population, and an unfair appellate process.

Plaintiff has also failed to persuade the undersigned that a violation has occurred regarding so-called "judicial-type fines" for misconduct violations, which are implemented as part of the punishment for violating rules. This includes Plaintiff's $50.00 fine as an allowable sanction for a Class X Menacing violation. *See supra* at 1279; Special Report, Attachment H (Money from fines is placed in the Inmate Welfare and Recreation Fund.). No evidence exists that the DCCC or the DOC issues bogus fines to fund their overcrowded facilities. *See* Special Report, Attachment G (affidavit of Debbie Mahaffey, Warden at DCCC). Nor has Plaintiff shown that a one-person disciplinary committee violated his due process rights.

Finally, Plaintiff's allegations regarding confiscation of monies sent to him by family and friends and through the prison "co-payment" system are vague, conclusory, and do not entitle him to the extreme remedy of permanent injunctive relief in this situation. *See Grimsley v. MacKay,* 93 F.3d 676, 679 (10th Cir.1996) (Conclusory allegations are insufficient to support a constitutional violation.). Plaintiff contends that debts on prisoner accounts are to be written off after one year as uncollectible. *See* Pl. Response, Attachment G (response from Officer John Hand noting that co-payments, either medical or legal, remain on the account for 12 months and are written off the following month).

Plaintiff claims that his debts, and the debts of other inmates, have not been written off pursuant to policy, and that the DOC is using the co-payment system to improperly divert inmate funds. However, Plaintiff's own attachments illustrate that he was informed of the proper procedures to follow for contacting the appropriate person and inquiring into a possible overpay. *See* Pl. Response, Attachment H–3, dated April 28, 1999. Plaintiff's attempt to assert the rights of other inmates on an issue for which he has no standing is improper. Plaintiff can only challenge actions personally affecting his rights.

Even assuming Plaintiff's allegations are correct and that his debts were not written off after one year, the undersigned is not persuaded that this warrants a conclusion that the DOC is improperly using the co-payment system to divert funds. Moreover, the record shows that Defendants instructed Plaintiff as to the proper procedures for challenging any overcharges. Therefore, Plaintiff has failed to sustain his burden of proof that the extreme remedy of permanent injunctive relief is war-

ranted in this situation, which would require the DOC to change its policies and procedures for charging inmates for various services including medical, dental, clothing, and xeroxing costs. Moreover, Plaintiff's bald allegations that he was charged for medicine never received is unsupported in the record. Accordingly, the undersigned recommends that Plaintiff's prayer for permanent federal injunctive relief requiring the DOC to change various policies and practices should be **DISMISSED.**

### RECOMMENDATION

For the reasons discussed above, the U.S. Magistrate Judge recommends that, pursuant to Fed.R.Civ.P. 12(b)(6), the District Court **GRANT** Defendants' Motion to Dismiss Plaintiff's § 1983 claim for failure to state a claim upon which relief can be granted. [Doc. No. 12–1].

### OBJECTIONS

The District Judge assigned to this case will conduct a *de novo* review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court.

*See Moore v. United States,* 950 F.2d 656 (10th Cir.1991); *Talley v. Hesse,* 91 F.3d 1411, 1412–13 (10th Cir.1996).

Feb. 19, 2003.